UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------x

UNITED STATES OF AMERICA,

     -against-                                           S7 98 Cr. 1023 (LAK)

KHALID AL-FAWWAZ, *et al.*,

              Defendants.                       AMENDED MEMORANDUM

----------------------------------------------------x


## MOTION FOR ISSUANCE OF LETTERS ROGATORY TO THE UNITED KINGDOM

## AND FOR RULE 15 DEPOSITIONS OF WITNESS PAUL BANNER AND ANOTHER

## MI5 OFFICER AND MEMORANDUM OF LAW IN SUPPORT THEREOF


### ATTORNEYS FOR KHALID AL-FAWWAZ


Bobbi C. Sternheim, Esq.                      David V. Kirby, Esq.
Law Offices of Bobbi C. Sternheim            Barbara E. O'Connor, Esq.
33 West 19th Street – 4th Floor              O'Connor & Kirby, PC
New York, NY 10011                           174 Battery Street
212-243-1100                                 Burlington, VT 05401
                                             802-863-5655

**MOTION FOR LETTERS ROGATORY TO THE UNITED KINGDOM
AND TO ALLOW A RULE 15 DEPOSITION OF WITNESS PAUL BANNER
AND ANOTHER SECURITY SERVICE (MI5) OFFICER**

Khalid Al Fawwaz, through his counsel, hereby moves for the issuance of Letters

Rogatory to the courts of the United Kingdom for assistance in obtaining testimony from

Security Service (MI5) Officer Paul Banner and from the officer who replaced him in dealing

with Mr. Al Fawwaz.  This Court has issued Letters Rogatory to the United Kingdom for: 1. All

documents that concern or memorialize any and all conversations between MI5 officers

(including Mr. Paul Banner) and Mr. Al Fawwaz during the period 1994 to 1998; and 2. All

recordings obtained from any electronic surveillance of Khalid Al Fawwaz's home and/or

telephones and/or of the Advice and Reformation Committee's telephones during the period 1994

to 1998.  The defense had requested that Letters Rogatory be issued also for the testimony of

Officer Banner.  The Court denied that request without prejudice to our renewing it by

September 16, 2013.  We hereby renew that request.

Mr. Al Fawwaz further moves under Rule 15, Fed.R.Crim.P., that the Court order

depositions of these witness to be taken in the United Kingdom either through the compulsion of

the British courts pursuant to the Letters Rogatory or, if possible, through informal procedures

established between the parties.  The testimony sought is exculpatory, it cannot be obtained from

any other source, and it is necessary to provide Mr. Al Fawwaz with a fair trial.

<b>Factual Support for this Request</b>

**The Allegations and Countervailing Evidence.**  Indictment S7 98 Cr. 1023 (LAK) is a

massive indictment containing a total of 308 counts, including several conspiracies and 270

separate counts of murder.   Khalid Al Fawwaz is charged only in four conspiracy counts (One,

Three, Five and Six) with conspiring, as an alleged member of al Qaeda along with Usama Bin

2

Laden and others, to kill Americans worldwide and destroy United States embassies and defense utilities.

From 1994 until his arrest in 1998, Mr. Al Fawwaz headed the London office of the Advice and Reformation Committee (ARC), a Saudi dissident group actively pursuing peaceful reform of the Saudi government.  The Consultative Council of the ARC was made up of numerous Saudi dissidents who remained anonymous because of the danger of retaliation from the Saudi government they faced as dissidents living in Saudi Arabia.  The only publicly acknowledged members were Bin Laden and Mr. Al Fawwaz.  Being publically acknowledged as a dissident placed Mr. Al Fawwaz in grave danger from the Saudi security services because dissent is violently repressed in Saudi Arabia.  Indeed, part of the information sought from the MI5 materials concerns a Saudi plot to kill Mr. Al Fawwaz and other Saudi dissidents that Mr. Al Fawwaz learned of from MI5 Officer Paul Banner who was apparently concerned for Mr. Al Fawwaz's safety.

In the extradition proceedings and in the indictment, the government alleges that Mr. Al Fawwaz's position as London representative of the Advice and Reformation Committee was a "front" for Al Qaeda activities.  The government also cited the security measures that Mr. Al Fawwaz took to protect the identities of other members of the Advice and Reformation Committee as indicia of his role as an Al Qaeda member.

The government also alleged in the extradition proceedings that Mr. Al Fawwaz pledged bayat (unconditional loyalty) to Bin Laden.

**Interactions with MI5 and Paul Banner.**  Shortly after Mr. Al Fawwaz arrived in the United Kingdom, Paul Banner approached him and proposed that they meet and talk.  They met

in Room 030 of the Old War Office Building in Whitehall (a British government building).[1]

Banner explained that he was with MI5 and proposed that he and Mr. Al Fawwaz meet regularly.

These meetings occurred, spanning the entire four years prior to his arrest in 1998, sometimes at

Room 030, but often at hotels in and around London.  When the meetings took place outside of

government buildings, other officers would be present at the hotel to meet Mr. Al Fawwaz and

escort him to the room for the meeting with Officer Banner or his replacement.

In approximately 1998, Officer Banner introduced Mr. Al Fawwaz to another officer

(whose name Mr. Al Fawwaz has forgotten).  This officer (referred to at times as "the

replacement officer") took over for Officer Banner in meeting with Mr. Al Fawwaz.

The meetings, always prearranged by Mr. Banner or one of his colleagues, would last at

times up to three hours.  Mr. Al Fawwaz discussed his political and religious views, his role with

the Advice and Reformation Committee, security issues, the plight of Muslims in different

regions around the world and similar issues.  Throughout, Mr. Al Fawwaz expressed his

commitment and desire to secure peace with the Saudi Government for all Muslims without

recourse to any violence or other unlawful activity.  Detailed notes were made by the officers in

the course of meetings.

Mr. Banner also informed Mr. Al Fawwaz at various times that MI5 was concerned for

his security.  On one particular occasion, Mr. Al Fawwaz was told that he, along with other

Saudi dissidents, were the targets of an assassination plot.  Mr. Al Fawwaz was specifically told

that the plot had been hatched by the United States authorities, that the exercise was funded by

---

[1]   In an address book seized at his home, Mr. Al Fawwaz posted an entry for Paul Banner (misspelled as "Bonner").  The entry provides a telephone number and notes "030" "Old War Office Bilding [sic]".

the Saudi regime and that Moroccan agents had been engaged to carry out the proposed executions.

Mr. Banner offered advice on steps Mr. Al Fawwaz could take for his personal safety. He also offered to provide bodyguards and to survey his home to consider what measures could be taken to improve security. Mr. Al Fawwaz was advised as to various measures he could take to guard against an attack.

Following the publication and circulation of the declaration made by Bin Laden in 1996, Mr. Al Fawwaz was interviewed by Mr. Banner. Mr. Al Fawwaz was unequivocal with respect to his position. He stated in no uncertain terms that he did not support or advocate any violence. He reiterated his role in the ARC as a reformer solely concerned with peaceful reform within Saudi Arabia. He also made it clear that the ARC as a whole was exclusively committed to peaceful reform (within Saudi Arabia). Although Bin Laden had been one of the founding members of the ARC, following the publication of the August 1996 declaration, both Mr. Al Fawwaz and other members of the ARC made it clear that Bin Laden had diverged from the goals of the ARC and thus diverged from the path of the reformers (including Mr. Al Fawwaz).

Examples of specific interactions with Mr. Banner include an instance when Mr. Al Fawwaz asked him whether it would be permissible to communicate with Bin Laden (after Bin Laden moved from Sudan to Afghanistan). The context of any such communications would have been to further the ARC's declared peaceful aims. Notably, this question was put to Mr. Banner prior to the 1996 declaration by Bin Laden. Mr. Al Fawwaz subsequently confirmed to Mr. Banner that he did not have any idea that such a declaration, one that diverged dramatically from the ARC's goals, was about to be released.

Mr. Al Fawwaz made it clear to Mr. Banner that he wished to remain in contact with the Consultative Council of the ARC in order to discuss issues relating to the reform movement.  Mr. Banner advised Mr. Al Fawwaz that there was no objection to such communications or contact so long as there was no discussion involving any criminal conduct. Mr. Banner reiterated that communications by themselves were not unlawful.  Mr. Al Fawwaz made a point of stating to Mr. Banner that if Banner's or the MI5's views changed then he wished to be notified immediately as he was acutely conscious of not placing himself in a position where he "did anything against the law".

Mr. Al Fawwaz noted that the frequency of meetings with MI5 increased after the 1996 declaration was published.  Mr. Banner met with Mr. Al Fawwaz following the publication of the 1996 declaration in Al Quds, an Arabic language newspaper.  Mr. Al Fawwaz recalls that a further meeting was held after an additional article was published in the Independent newspaper (also concerning the 1996 declaration).  Mr. Al Fawwaz enquired, once again, whether it was permissible for him to communicate with Bin Laden.  Mr. Banner informed Mr. Al Fawwaz that there continued to be no objection to this.  However, he told Mr. Al Fawwaz what could be a problem was "what you discuss with him".  Mr. Banner elaborated by explaining that anything which was "against the law . . . could be a . . . problem".  Mr. Banner suggested that, if Mr. Al Fawwaz had any doubt, he ought to seek legal advice.

Mr. Al Fawwaz told Mr. Banner that he wanted to seek an explanation concerning the release of the 1996 declaration without his knowledge or consent.  Mr. Al Fawwaz and other ARC members were angry.  They felt Bin Laden had jeopardized the mission of the ARC.   Mr. Al Fawwaz was shocked.  He wanted to know why Bin Laden had diverged from the ARC's unequivocal commitment to advising Saudi rulers on the benefits of change, peacefully so.

**The Extradition Proceedings.**  During the extradition proceedings in the UK, counsel for Mr. Al Fawwaz requested that the court subpoena MI5 and Paul Banner to provide evidence about the relationship between Mr. Al Fawwaz and MI5.  The court agreed.  Thereafter, counsel for MI5 appeared at the proceedings accompanied by an MI5 officer carrying a substantial file.  Counsel informed the parties that Mr. Banner was out of the country.  The file was ultimately not reviewed or testimony obtained because Mr. Banner, the officer with first-hand knowledge, was not present.

**The Testimony to Be Obtained from Paul Banner and the Officer who replaced him in interactions with Mr. Al Fawwaz.**

Mr. Al Fawwaz seeks to obtain through letters rogatory the testimony of Mr. Paul Banner and the officer who replaced him in his interactions with Mr. Al Fawwaz to identify and authenticate the MI5 information already subject to the prior letters rogatory and to discuss the conversations that they had with Mr. Al Fawwaz.

**MEMORANDUM OF LAW**

**The Testimony of Paul Banner is Exculpatory and Necessary for a Fair Trial.**

Unquestionably, Mr. Al Fawwaz had numerous contacts with members of MI5.  These contacts were entirely voluntary on Mr. Al Fawwaz's part.  The content of the conversations between Mr. Banner and Mr. Al Fawwaz are crucial to Mr. Al Fawwaz's defense.  We are informed and believe fully that the conversations are exculpatory.  They establish the legitimacy of the ARC, its peaceful purposes and Mr. Al Fawwaz's role in the organization.  They demonstrate the lengths to which Mr. Al Fawwaz would go to make sure his conduct in the United Kingdom was proper and legal.  These contacts are the antithesis of an undercover terrorist operative and demonstrate Mr. Al Fawwaz's openness and good faith.  Indeed, Mr. Al

Fawwaz asked if his contacts with Bin Laden were permissible and received the answer that they were so long as criminal matters were not discussed. It simply defies belief that someone who knew that Bin Laden was planning to orchestrate an attack on US embassies would so openly disclose his close association with Bin Laden. These conversations will also disclose the particular interest of the British in the Saudi dissident movements located in London.

Moreover, these conversations undermine the government's claim that Mr. Al Fawwaz pledged bayat (unconditional loyalty) to Bin Laden. Mr. Al Fawwaz, on numerous occasions during these conversations with Mr. Banner, expressed his disagreement with Bin Laden's turn toward violence and his declaration and fatwah. Mr. Al Fawwaz expressed his distress that Bin Laden unilaterally issued his Declaration in 1996. Mr. Al Fawwaz felt that this undermined all the work he was doing through the ARC and discredited the message of peaceful change that the ARC was promoting. These statements are not those of a man who has pledged unconditional loyalty to Bin Laden.

Further, the fact that the British intelligence services warned Mr. Al Fawwaz of a plot to assassinate him and other Saudi dissidents is particularly relevant to the defense. This would corroborate the dangers that members of legitimate dissident groups like the ARC faced, and continue to face, from the Saudi government. Many of the activities that the government characterizes as surreptitious and as indicia of criminality are simply normal precautions that a Saudi dissident group like the ARC would take in light of the dangers posed by the Saudi security services. For instance, the government suggests that Mr. Al Fawwaz ran an MCI phone line to aid secret contact with al Qaeda members. We argue, on the contrary, that the Consultative Council members of the Advice and Reformation Committee who lived in Saudi Arabia were in extreme danger from the Saudi security services simply for being dissidents, and

that the MCI phone line was obtained to provide a safe way that could not be tracked by the security services for those members of the ARC in Saudi to contact the London office.  The Saudi funded assassination plot to kill three prominent dissidents in London corroborates that danger.   These men were not targeted because they were al Qaeda; they were targeted because they were dissidents clamoring against the corruption and the repressive and undemocratic policies of the Saudi government.

We seek the testimony of Mr. Banner and the officer who replaced him in dealing with Mr. Al Fawwaz only in so far as it is necessary to authenticate the materials from MI5 and to elucidate the conversations they had with Mr. Al Fawwaz.  We do not seek to "rummage" through MI5's files or through Mr. Banner's or his colleague's memories not related to these areas.  Such testimony will be crucial to authenticate tape recordings of the meetings (if such exist) or to describe those conversations from memory or, if the officers do not remember some conversations, introduce the notes of the conversations through the past recollection recorded exception to the hearsay rule.  Fed.R.Evid. 803(5).

It is important to note that the request for testimony concerning the interaction between Mr. Al Fawwaz and MI5 does not invade the intelligence gathering functions of the UK government.  While general intelligence information on Mr. Al Fawwaz would be valuable, our request has been narrowed to simply the testimony concerning the interactions between Mr. Al Fawwaz and Officer Banner and his replacement.  Mr. Al Fawwaz was present for those meetings and certainly has a right to disclose the contents of the meetings.  Revelation of the existence and content of those conversations does not in any way undermine the intelligence gathering function; indeed, the existence and content have already been revealed by counsel for Mr. Al Fawwaz in the extradition proceedings; and in part, confirmed by the UK government in

responding to the subpoena in the extradition proceedings.[2]

**The Request for Letters Rogatory and Depositions under Rule 15 Should Be Granted.**

This Court has discretion to issue Letters Rogatory to the courts of the UK for the information and testimony requested:

> Federal courts have both statutory and inherent authority to issue letters rogatory, regardless of whether the case is civil or criminal. See 28 U.S.C. § 1781; *United States v. Staples*, 256 F.2d 290, 292 (9th Cir.1958), *United States v. Steele*, 685 F.2d 793, 802 (3d Cir.1982). And, it is also settled that the decision to issue letters rogatory lies within a court's sound discretion. *See United States v. Mason*, 919 F.2d 139 (4th Cir.1990) (unpublished per curiam decision) (citing *Leasco Data Processing Equip. Corp. v. Maxwell*, 63 F.R.D. 94 (S.D.N.Y.1973)). *Accord U.S. v. Liner*, 435 F.3d 920, 924 (8th Cir.2006) (denial of letters rogatory reviewed for abuse of discretion). In general, "[w]here the relevancy or materiality of the testimony sought is doubtful, the court should not grant the application" for letters rogatory. 26B C.J.S. Depositions § 34 (internal citations omitted). Instead, letters rogatory should be issued only where "necessary and convenient."

*United State v. Rosen*, 240 F.R.D. 204, 215 (EDVa 2007) (final citation omitted); see also 28 USC § 1781. As we have shown above, the testimony is relevant and material to Mr. Al Fawwaz's defense. Indeed, it is substantially exculpatory. Thus, it is critical to his defense.

Similarly, Rule 15 depositions should only be taken in "exceptional circumstances and in the interests of justice." Fed.R.Crim.P. 15(a)(1). "It is well-settled that the 'exceptional circumstances' required to justify the deposition of a prospective witness are present if that witness' testimony is material to the case and if the witness is unavailable to appear at trial. *United States v. Singleton*, 460 F.2d 1148, 1154 (2d Cir.1972)." *United States v. Johnpoll*, 739 F.2d 702, 709 (2nd Cir. 1984). "Unavailability is to be determined according to the practical

---

[2] Indeed, the UK government appeared to be prepared to allow the defense to view materials from MI5's files and to examine an officer of MI5 about those materials at the extradition proceedings. Thus, it seems fair to say that the UK government has indicated by responding to the subpoena that it is not taking the position that its national security would be compromised if the materials were released or an officer testified about the interactions.

standard of whether under the circumstances the [party] has made a good-faith effort to produce the person to testify at trial. *See Ohio v. Roberts*, 448 U.S. 56, 74 (1979)." *Id.*

Here we have met both these criteria.  As we have shown, the testimony of Paul Banner and of the officer who replaced him in dealing with Mr. Al Fawwaz is crucial for Mr. Al Fawwaz's defense.  Such testimony is relevant and material to establishing who Mr. Al Fawwaz is and what he was doing in London and elsewhere during the events of this case.  Indeed, the testimony contradicts any suggestion that he gave bayat to Bin Laden.  It also explains numerous of the measures that Mr. Al Fawwaz took to protect communications with the ARC Consultative Counsel, which the government has alleged are indicia of membership in Al Qaeda.  The testimony, establishing and authenticating as it does, the relationship between MI5 and Mr. Al Fawwaz is both material and exculpatory.  Thus, as we discuss in specific detail below, it is appropriate that Letters Rogatory issue and that Rule 15 depositions be authorized.

**The Specific Factors listed in Rule 15(c)(3)**

Rule 15(c)(3) provides the criteria for depositions outside of the United States without the defendant's presence.  The Rule provides:

**(3) Taking Depositions Outside the United States Without the Defendant's Presence.** The deposition of a witness who is outside the United States may be taken without the defendant's presence if the court makes case-specific findings of all the following:

(A) the witness's testimony could provide substantial proof of a material fact in a felony prosecution;

(B) there is a substantial likelihood that the witness's attendance at trial cannot be obtained;

(C) the witness's presence for a deposition in the United States cannot be obtained;

(D) the defendant cannot be present because:

(i) the country where the witness is located will not permit the defendant

to attend the deposition;

(ii) for an in-custody defendant, secure transportation and continuing custody cannot be assured at the witness's location; or

(iii) for an out-of-custody defendant, no reasonable conditions will assure an appearance at the deposition or at trial or sentencing; and

(E) the defendant can meaningfully participate in the deposition through reasonable means.

Our request meets these criteria.

**Criteria (3)(A):** First, this is a felony prosecution.  The depositions of Paul Banner and the replacement officer would clearly provide proof of material facts crucial to Mr. Al Fawwaz's defense.  The facts are these.  (1) The government alleges that the Advice and Reformation Committee was an Al Qaeda front organization.  The officers' testimony of their interactions with Mr. Al Fawwaz would clearly refute that.  Mr. Al Fawwaz stridently promoted the ARC as an independent, peaceful organization of Saudi dissidents.  His reactions to Bin Laden's Declaration and Fatwa showed that these undercut the organization. (2) The government alleges that Mr. Al Fawwaz supported the aims of Al Qaeda.  Mr. Al Fawwaz's reaction to the Declaration and Fatwa of Bin Laden demonstrated that he was categorically opposed to those aims. (3) The government alleges that Mr. Al Fawwaz pledged "bayat" (unconditional loyalty) to Bin Laden.  Mr. Al Fawwaz's interactions with the MI5 officers will demonstrate that that claim is simply unfounded.  (4) The government alleges that a number of Mr. Al Fawwaz's actions in protecting his communications with other members of the ARC were indicia of a terrorist organization.  The warning of the British Security Service that the Saudi's funded a plot to assassinate Mr. Al Fawwaz and other Saudi dissidents demonstrates the legitimate reasons why Mr. Al Fawwaz took security precautions in arranging for communications with members of the ARC.  (5) These interactions with Security Service officers demonstrate the lengths to which

Mr. Al Fawwaz would go to make sure his conduct in the United Kingdom was proper and legal. They are the antithesis of an undercover terrorist operative and demonstrate Mr. Al Fawwaz's openness and good faith.  Indeed, Mr. Al Fawwaz asked if his contacts with Bin Laden were permissible and received the answer that they were so long as criminal matters were not discussed.  It simply defies belief that someone who knew that Bin Laden was planning to orchestrate an attack on US embassies would so openly disclose his close association with Bin Laden.  (6) Finally, the testimony of the officers would authenticate the materials sought in the prior letters rogatory – information material to Mr. Al Fawwaz's defense.

**Criteria (3)(B) & (C):**  There is a substantial likelihood that the attendance of neither officer can be obtained for trial or for a deposition in the United States.  London counsel for Mr. Al Fawwaz has attempted to reach Mr. Banner but cannot even find a published telephone number for the Security Service.[3]  Counsel did, however, find a website on which a request to MI5 can be left.  We have left such a request for Mr. Banner on the website asking that he agree to come to the United States to testify at trial.  We further requested that a dialogue be started that might lead to clarifying whether Banner will be willing to come or whether the agency will be willing to allow his attendance.  It has been over one week and no response has been received to our inquiry.  Since we do not have the name of the replacement officer, we cannot make a similar request for him.

We do not expect that these requests will be fruitful.  For instance, we presume that the interactions in question might still be classified even though during the extradition process the Security Service was willing to reveal these interactions to counsel for Mr. Al Fawwaz.  In light of this, it seems fair to posit that MI5 will not want its officers testifying in the courts of another

---

[3]   Counsel even tried to reach Mr. Banner at the telephone number listed in Mr. Al Fawwaz's address book.  Not surprisingly, this 19-year-old number does not appear to be in service.

country.  Responding to a deposition in the United Kingdom before a UK court is far different.

Under those circumstances, MI5 could be assured that it would have the ability to protect its

national security interests.  In the courts of another country, it would not receive the same level

of assurance.  While we will report to the Court any response from MI5 through the website

request or through any other contact we are able to make, it seems fair to conclude that Officer

Banner and his replacement are unavailable to us for purposes of testimony at trial or for a

deposition in this country.

**Criteria (3)(D):**  Mr. Al Fawwaz is in custody.  We presume that "secured transportation

and continuing custody cannot be assured at the witness's location" – in other words, such

transportation and custody cannot be worked out with the United Kingdom.[4]  If Mr. Al Fawwaz

cannot be physically present for the deposition, he is willing to be present through a video

connection so he can contemporaneously view the proceedings and through a telephonic link-up

so he can contemporaneously assist counsel.  These communication links can be arranged

reasonably through the agreement of the parties and in consultation with the presiding court in

the United Kingdom.

**Criteria (3)(E):**  Through contemporaneous video and telephonic communication as

described above, the defendant can meaningfully participate in the depositions through

reasonable means.  *United States v. Salim*, 855 F.2d 944, 949-55 (2d Cir. 1988).  Because the

depositions will be taken in the United Kingdom, the complicating issues faced in *Salim* because

of the French legal system and its requirement that the magistrate conduct the questioning will

---

[4]   Mr. Al Fawwaz was held for 14 years in the United Kingdom and was transported to court
appearances there.  Thus, the United Kingdom has the ability to handle a prisoner such as Mr. Al
Fawwaz.  We certainly have no objection to having Mr. Fawwaz transported to the UK and held
in custody there so that he can be present for the depositions.  We presume, however, that the
logistics and legalities of that would be difficult, if not insurmountable.

not be present.

Thus, we have established the criteria required by Rule 15 to allow these foreign depositions.  As such, we request that the Court issue the requested Letters Rogatory and authorize the requested depositions under Rule 15.  A proposed Letters Rogatory is attached.

**CONCLUSION**

For the above-stated reasons, it is respectfully requested that the Court grant the relief requested.

Dated: New York, New York

September 26, 2013

> Respectfully submitted,
> ATTORNEYS FOR KHALID AL FAWWAZ
>
> *Bobbi C. Sternheim*
> Bobbi C. Sternheim, Esq.
>
> *David V. Kirby*
> David V. Kirby, Esq.
>
> *Barbara E. O'Connor*
> Barbara E. O'Connor, Esq.