UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA


        -against-                               S7 98 Crim. 1023 (LAK)



KHALID AL FAWWAZ & ADEL ABDEL BARY,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## MEMORANDUM OPINION


Appearances:


<div style="display:flex">
<div>

Sean S. Buckley
Rachel P. Kovner
Stephen J. Ritchin
Assistant United States Attorneys
Preet Bharara
UNITED STATES ATTORNEY

</div>
<div>

Andrew G. Patel
Lauren Kessler
LAW OFFICES OF ANDREW G. PATEL

Linda Moreno
LAW OFFICE OF LINDA MORENO

Ahmed Ghappour
LAW OFFICES OF AHMED GHAPPOUR

*Attorneys for Defendant Adel Abdel Bary*

Bobbi C. Sternheim
LAW OFFICES OF BOBBI C. STERNHEIM

David V. Kirby
Babrbara E. O'Connor
O'CONNOR & KIRBY, PC

*Attorneys for Defendant Kahlid Al Fawwaz*

</div>
</div>

LEWIS A. KAPLAN, *District Judge.*

Before this Court are four motions – one by Bary and three by al Fawwaz – to depose witnesses located abroad, who allegedly are unable or unwilling to travel to the United States to testify in person, under Rule 15 and for letters rogatory.

*Background*

Bary and al Fawwaz were indicted in this Court in 2000 for, among other things, conspiring with Usama bin Laden and others to kill Americans abroad by, among other means, bombing the United States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania. Two hundred twenty four people reportedly were killed and many more injured in those bombings.

The indictment alleges that bin Laden established al Qaeda's London office, called the Advice and Reformation Committee ("ARC"), in 1994 and installed al Fawwaz at the helm.[1] Al Fawwaz, with Bary as a witness to the lease, rented office space for the ARC at 1A Beethoven Street on or about September 4, 1997.[2] The indictment further accuses al Fawwaz of providing bin Laden and other al Qaeda members with a satellite telephone to facilitate communication[3] and of storing and disseminating bin Laden's 1996 Declaration of *Jihad* on and through the computer at his residence.[4] It alleges broadly that all members of al Qaeda pledged an oath of allegiance, or "*bayat*," to bin Laden.[5]

---

[1]    (S7) Superseding Indictment [DI 186] at 22.

[2]    *Id.* at 29.

[3]    *Id.* at 24.

[4]    *Id.* at 25-26.

[5]    *Id.* at 4.

*Discussion*

I.      *Legal Standard*

      A.      *Rule 15*

        A party to a criminal proceeding may move under Rule 15 "that a prospective witness be deposed in order to preserve testimony for trial.  The court may grant the motion because of exceptional circumstances and in the interest of justice."[6]  This standard is met where the "testimony is material to the case and [] the witness is unavailable to appear at trial."[7]

        To satisfy the materiality requirement, the moving party must show that the proposed testimony would exculpate or, in the event that the government is the moving party, inculpate, the defendant.[8]  It need not be definitive proof of guilt or innocence,[9] but should be more than merely relevant.[10]  Furthermore, the proposed testimony must be non-cumulative of other evidence and admissible.[11]  Where admissibility "is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as

---

[6]      FED. R. CRIM. P. 15(a)(1).

[7]      *United States v. Johnpoll*, 739 F.2d 702, 709 (2d Cir. 1984).

[8]      *United States v. Kelly*, 36 F.3d 1118, 1125 (D.C. Cir. 1994).

[9]      *United States v. Bronston*, 321 F. Supp. 1269, 1272 (S.D.N.Y. 1971) ("It is not necessary that defendant show the testimony will surely acquit him.").

[10]     *See United States v. Ismaili*, 828 F.2d 153, 161 (3d Cir. 1987).

[11]     *United States v. Drogoul*, 1 F.3d 1546, 1555 (11th Cir. 1993); *United States v. Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007); *United States v. Grossman*, No. S2 03 Cr. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. Mar. 2, 2005).

evidence."[12]  However, "[t]he court need not, at the cost of time and money, engage in an act of futility by authorizing depositions that clearly will be inadmissible at trial."[13]

To satisfy the unavailability requirement, the moving party must show that the witness is unable or unwilling to attend trial and that it has made a good faith effort to secure that witness's attendance.[14]  Foreign witnesses who are not subject to the government's subpoena power  and, despite the moving party's appropriate efforts, refuse to travel to this country to testify routinely are found unavailable.[15]  However, vague assertions that the witness may not be willing or able to travel at the time of the trial are insufficient to find unavailability.[16]

B.      Letters Rogatory

Letters rogatory are "the medium, in effect, whereby one country, speaking through one of its courts, requests another country, acting through its own courts and by methods of court procedure peculiar thereto and entirely within the latter's control, to assist the administration of

---

[12]

*United States v. Mann*, 590 F.2d 361, 366 (1st Cir. 1978); *United States v. Khan*, 06 Cr. 255 (DLI), 2008 WL 2323375, at *2, n.6, *3 (E.D.N.Y. June 2, 2008); *United States v. Njock Eyong*, 06 Cr. 305 (JDB), 2007 WL 1576309, at *1 (D.D.C. May 30, 2007).

[13]

*Drogoul*, 1 F.3d at 1555; *United States v. Warren*, 713 F. Supp. 2d 1, 4 (D.D.C. 2010).

[14]

*See Johnpoll*, 739 F.2d at 709.

[15]

*See, e.g.*, *Drogoul*, 1 F.3d at 1551-53; *Johnpoll*, 739 F.2d at 709; *United States v. Vilar*, 568 F. Supp. 2d 429, 438-39 (S.D.N.Y. 2008); *United States v. Sun Myung Moon*, 93 F.R.D. 558, 559-60 (S.D.N.Y. 1982).

[16]

*See United States v. Kassar*, 572 F. Supp. 2d 375, 376 (S.D.N.Y. 2008) ("Furthermore, Inspector Villarejo's vague speculation that some theoretical future work commitments might make him unavailable is entirely insufficient to support a finding of unavailability." (citation omitted)).

justice in the former country."[17]  District "courts have inherent authority to issue letters rogatory."[18]

"[I]t is well settled that the decision of whether to issue letters rogatory lies within a district court's sound discretion."[19]  A court generally should exercise its discretion in granting an application for letters rogatory to take a Rule 15 deposition where the applicant has shown (1) exceptional circumstances under the rule and (2) that "the prospective witness will not appear at a deposition voluntarily."[20]

## II.     *Bary's Motion*

Bary moves to depose two witnesses – Iqbal Ahmed, in the United Kingdom, and Abdel Mageed Mohamed el Bary, in Cairo, Egypt, or another location to be agreed upon.  He has not satisfied the unavailability requirement as to either.

Ahmed, Bary's counsel in the UK, allegedly was present when British law enforcement personnel questioned Bary in the fall of 1998 and was involved in his extradition

---

[17]    *DBMS Consultants Ltd. v. Computer Associates Int'l, Inc.*, 131 F.R.D. 367, 369 (D. Mass. 1990) (quoting *The Signe*, 37 F. Supp. 819, 820 (E.D. La. 1941)).

[18]    *Id.* (citing *United States v. Reagan*, 453 F.2d 165, 172 (6th Cir. 1971)); *see also* 28 U.S.C. § 1781(b)(2) ("This section does not preclude . . . the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner."); *see also* FED. R. CIV. P. 28(b)(1)(B) ("A deposition may be taken in a foreign country: . . . under a letter of request, whether or not captioned a 'letter rogatory.'").

[19]    *United States v. Jefferson*, 594 F. Supp. 2d 655, 675 (E.D. Va. 2009) (citing *United States v. Mason*, No. 89–5675, 1990 WL 185894, at *2 (4th Cir. Nov. 29, 1990)).

[20]    *Id.* (citing *United States v. Rosen*, 240 F.R.D. 204, 215 (E.D. Va. 2007)).

proceedings.[21]  He admits that he is willing to travel to the United States to testify at trial, but the defense requests his deposition nonetheless because his schedule cannot be guaranteed.[22]

Mohamed el Bary, defendant Bary's brother, is said to be prepared to testify about Bary's activities and treatment in Egypt and the reasons for which he sought asylum in the United Kingdom.[23]  Bary concedes that his brother is willing to travel to the United States, but is not certain whether he will be able to obtain a visa.[24]  There is no indication that Mohamed el Bary has attempted unsuccessfully to obtain a visa.

Such speculative concern that logistics, work, or travel schedules might prevent a witness's attendance at trial is not sufficient to satisfy the unavailability requirement.[25]  Moreover, the Court has serious doubts about the materiality of Mohamed el Bary's proposed testimony concerning Bary's political activities in Egypt and treatment under the Mubarak regime and Ahmed's proposed testimony concerning the legal proceedings against Bary in the UK.  In light of the Court's ruling on unavailability, however, it declines to comment further on the question of materiality.

---

[21]

Patel Decl. [DI 1297] ¶¶ 3-6.

[22]

*Id.* ¶¶ 7-8.

[23]

*Id.* ¶ 10.

[24]

*Id.* ¶ 11.

[25]

*Kassar*, 572 F. Supp. 2d at 376-77; *see also United States v. Paredes-Cordova*, 03 Crim. 987 (DAB) 2009 WL 1585776, at *4 (S.D.N.Y. June 8, 2009) (holding that proposed Rule 15 deponents were not unavailable where there was no evidence that they had attempted to and failed at obtaining travel visas).

### III.   *Al Fawwaz's Motions*

Al Fawwaz makes three separate motions to depose nine different individuals abroad and for letters rogatory.[26]  He moves also for letters rogatory to obtain certain documents that allegedly are in the possession of the British government.

### A.   *Al Fawwaz's First Motion – Paul Banner and His Replacement*

Al Fawwaz's first motion[27] concerns only MI5 agents Paul Banner and his replacement.[28]  Al Fawwaz contends that he met regularly with Banner, and then his replacement, between 1994 and 1998.[29]  The two MI5 agents allegedly would testify about their official interactions with al Fawwaz, in which the latter claims to have disavowed Bin Laden's 1996 Declaration of *Jihad* and about al Fawwaz's security concerns as a dissident and the ARC.  In addition, Banner allegedly advised al Fawwaz concerning the legality of his communications with bin Laden and other ARC members.[30]

Defendant's counsel in London apparently has been unable to obtain a telephone

---

[26]

Al Fawwaz has waived his right to be physically present at any of the Rule 15 depositions taken abroad as long as he is permitted to observe them through simultaneous audio and video transmission.  DI 1453; *see* FED. R. CRIM. P. 15(c)(1)(A).

[27]

DI 1323.

[28]

Al Fawwaz apparently is unable to recall the name of Banner's replacement.  Kirby Am. Decl. [DI 1324] ¶ 8.

[29]

*Id.* ¶¶ 7-8.

[30]

*Id.* ¶¶ 9-16.

number or other contact information for Banner or the Security Service.[31]  Counsel states that it has

attempted to contact Banner through the only publicly available means of communication – a Security

Service request form online – and has not received any response.[32]  Al Fawwaz thus moves for a Rule

15 deposition and requests letters rogatory to the United Kingdom.  The motion is unopposed.

The MI5 agents' proposed testimony would be material.  Based on al Fawwaz's

representations, they would testify favorably about the nature of their official interactions with al

Fawwaz from 1994 through 1998, including his relationship with bin Laden, the role that the ARC

played, and the extent to which al Fawwaz was involved in terrorism related activity.[33]  Counsel's

inability even to locate contact information for the agents, despite good faith effort, renders the agents

unavailable and merits the issuance of letters rogatory to the United Kingdom.

B.      *Al Fawwaz's Second and Third Motions*

Al Fawwaz moves next to take Rule 15 depositions and for related letters rogatory

concerning depositions of Naomi Wood, Abdel Bari Atwan, Dr. Mustapha Alani, Dr. Sa'ad al-Faqih,

Mohammad al Massari, Mark Huband, and Abdullah Anas.

---

[31]

     *Id.* ¶ 18.

[32]

     *Id.* ¶¶ 18-19.

[33]

     The Court already has granted al Fawwaz's motion for letters rogatory to obtain from MI5 documents and memoranda concerning or memorializing the interactions between Banner or his replacement and al Fawwaz and recordings of electronic surveillance taken of al Fawwaz and/or the ARC.  DI 1283.

### 1. Naomi Wood

Wood allegedly was the rental agent for the office at 1A Beethoven Street that al Fawwaz and Bary occupied.[34] Al Fawwaz asserts that she would testify to that fact and authenticate documents showing that his access to and control over the office ended in February 1998.[35] Such evidence, al Fawwaz argues, would undermine the government's claim that incriminating documents recovered from the office in fall 1998 were in al Fawwaz's possession or control. Al Fawwaz further asserts that Wood has been uncooperative and has not responded to numerous telephone calls.[36] The government does not oppose al Fawwaz's motion as to this witness.

Assuming the truth of al Fawwaz's representations concerning Wood's testimony, the Court finds that the testimony could be material exculpatory evidence with respect to inculpatory documents retrieved at 1A Beethoven Street after the term of his lease expired. Wood's apparent refusal to cooperate with or respond to counsel's attempts to contact her render her unavailable and justify issuance of letters rogatory.

### 2. Abdel Bari Atwan

Al Fawwaz proposes nearly identical testimony from each of Atwan and Alani. During the relevant period, Atwan was editor-in-chief of an Arab language newspaper published in

---

[34] Kirby Am. Decl. [DI 1327] ¶ 5. Al-Fawwaz refers to Wood as the "rental agent" of 1A Beethoven Street. The government in its Rule 15 motion refers to Witness 1 as the owner of 1A Beethoven Street. The government in its opposition brief acknowledges that Witness 1 in fact is Naomi Wood. Gov. Opp. Br. [DI 1334] at 24.

[35] DI 1327 ¶ 5.

[36] Id. ¶ 6.

London and published or commented on certain communiques from the ARC.[37] Based on his experience as "a journalist writing about Islamic affairs since 1978," he allegedly would testify about the role and activities of Arab dissident groups, including his understanding, which appears to be based on interactions with al Fawwaz, that the ARC was not connected to al Qaeda.[38] He would testify also that al Fawwaz was in a state of shock in the immediate wake of the 1996 publication of bin Laden's Declaration of *Jihad* and disclaimed the messages of violence contained therein.[39] Atwan refuses to come to the United States to testify, in part because he was refused entry into the country when he attempted to travel to Brown University in order to make a speech.[40]

Atwan's proposed opinion testimony that the ARC was not affiliated with al Qaeda would be neither material nor admissible. The foundation for this testimony is said to be conversations that Atwan allegedly had with al Fawwaz and information gained in Atwan's role as a journalist. The indictment against al Fawwaz alleges that the ARC was a front for al Qaeda. Testimony that Atwan was aware of legitimate, non-criminal activities of the ARC and unaware of any criminal activities in which the ARC or al Fawwaz participated is not exculpatory absent some reason to believe that Atwan would or should have known both the organization's facial or public nature and, to the extent it had one, its secret nature. Al Fawwaz has proffered no such reason. Atwan's proposed testimony concerning al Fawwaz's alleged statements disclaiming responsibility for or agreement with the 1996 Declaration would be material, however, because it would tend to

---

[37]

     *Id.* ¶ 7.

[38]

     *Id.*; Raja Decl. [DI 1372] ¶ 5.

[39]

     DI 1327 ¶¶ 7-8.

[40]

     *Id.* ¶ 9; DI 1372 ¶ 4.

refute the government's claim that al Fawwaz was involved in the 1996 Declaration's dissemination.

The government challenges the admissibility of this proposed testimony on hearsay grounds. At this time, at least, that objection does not appear meritorious. Al Fawwaz's alleged statement to Atwan would be admissible as a "statement of the declarant's then existing state of mind."[41] Atwan reported in a 1999 affidavit that "almost immediately" after the 1996 Declaration was published, al Fawwaz approached him and was "in a state of shock . . . [he] was literally shaking" and "said 'I disagree with it completely.'"[42] The government acknowledges that the proffered facts suggest that the testimony may be admissible under the state of mind exception, but takes issue with the ambiguity of the phrase "almost immediately."[43] For the purposes of this motion, the Court accepts al Fawwaz's assertion that the statement was sufficiently proximate in time to the 1996 Declaration's release under Rule 803(3). Whether that proves to be so must abide the event.

Atwan's refusal to travel to the United States renders him unavailable. The government incorrectly asserts that "[t]he basis for Atwan's refusal to travel to the Untied States is left unspecified by the defense."[44] The basis for his refusal is specified and, even if it were not, the witness's unequivocal refusal to testify at trial is sufficient to establish unavailability as long as the

---

[41]
FED. R. EVID. 803(3) ("A statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."); *United States v. Quinones*, 511 F.3d 289, 311-12 (2d Cir. 2007).

[42]
Kirby Reply Decl. [DI 1373] ¶ 7 (quoting Abdel Bari Atwan Aff. June 23, 1999).

[43]
DI 1334 at 9, n.3.

[44]
*Id.* at 8-9.

movant has made a good-faith effort to secure the witness's presence.[45]

3.      *Dr. Mustapha Alani*

Alani allegedly is a senior adviser in security and terrorism studies at the Gulf Research Center in Dubai who met al Fawwaz on four occasions.[46]  Based on conversations that allegedly took place during those meetings, it is asserted that Alani, like Atwan, would testify that the ARC was a peaceful, reform-oriented organization and that al Fawwaz did not support or agree with bin Laden's 1996 Declaration.[47]  Alani has not responded to emails and other attempts to contact him at his office.[48]

The proposed testimony concerning the ARC's nature as a legitimate, peaceful organization is not material for the reasons stated above in relation to Atwan's proposed testimony.

Alani's proposed testimony concerning al Fawwaz's alleged disagreement with the 1996 Declaration would be material and exculpatory for the reasons discussed above in relation to Atwan.  But as with Atwan, the government objects to this testimony on admissibility grounds.  Al Fawwaz does not claim that his statement to Alani was made in the immediate wake of the 1996

---

[45]

*Johnpoll*, 739 F.2d at 709.  Al Fawwaz included with his reply brief a second declaration in which his London counsel states that Atwan "said that he had been invited to Brown University to speak a year or so before. He said that when he arrived at the US airport into which he was flying, he was detained for many hours and then finally refused entry. He was very hurt and angry about this. Because of this, he refuses to try to come to the United States again. We requested that he reconsider, but he was insistent that he would not travel to the US again."  DI 1372 ¶ 4.

[46]

DI 1327 ¶¶ 22-23.

[47]

*Id.* ¶ 23.

[48]

*Id.* ¶ 24.

Declaration's release.  It accordingly does not fall under the state of mind hearsay exception.[49]

Al Fawwaz's argument that the statement qualifies as a "verbal act" showing that he did not pledge *bayat* to bin Laden fails also.  First, verbal acts are "limited to statements that have independent legal significance, such as contractual offers or inter vivos gifts."[50]  No legal significance attaches to al Fawwaz's alleged statement.  Second, to the extent that the statement would be offered not for its truth but for the fact that it was said, it would not be relevant under Rule 401.[51]  Al Fawwaz's alleged statement would not make it less probable that he pledged *bayat* to bin Laden.  Disclaiming affiliation with al Qaeda or allegiance to bin Laden could have served bin Laden's interest – specifically, any desire he may have had to maintain the perception that the ARC was not affiliated with al Qaeda.  Thus, the statement was not necessarily inconsistent with al Fawwaz having pledged *bayat*.

### 4. *Dr. Sa'ad al-Faqih*

Al-Faqih is a Saudi dissident who ran two different dissident organizations in London and knew al Fawwaz.[52]  He allegedly would testify that the ARC was a legitimate dissident

---

[49]

    *See United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993).

[50]

    *United States v. Stover*, 329 F.3d 859, 869-70 (D.C. Cir. 2003); *see also United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013).

[51]

    FED. R. EVID. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").

[52]

    DI 1327 ¶ 10.

organization with a peaceful agenda, that he "participated in the purchase of a satellite telephone"[53] for a similar dissident organization, and that such phones were used to insulate dissidents from detection and reprisals.[54]  The government apparently alleged at one time that al-Faqih was affiliated with al Qaeda.[55]  As a result, he is unwilling and may be unable to travel to the United States.[56]

Al-Faqih's proposed testimony concerning his involvement in the purchase of a satellite telephone for another dissident organization is not material.  Satellite telephones may be useful to different individuals or organizations for a range of purposes.  Evidence that it was the practice of one dissident organization to use satellite telephones for security purposes thus would not negate the government's allegation that the satellite telephone that al Fawwaz allegedly purchased for bin Laden is evidence of criminality.

Nor is there any basis for believing that al-Faqih's proposed testimony concerning the nature of the ARC or dangers faced by dissidents would be material or admissible.  In addition to the materiality issues discussed above in relation to Atwan's testimony, al Fawwaz has not demonstrated an adequate foundation for al-Faqih's alleged knowledge about the ARC.

5.      *Mohammad al Massari*

Al Massari is said to be a Saudi physicist and dissident who was granted asylum by

---

[53]     *Id.*

[54]     Reply Br. [DI 1371] at 8.

[55]     DI 1327 ¶ 11.

[56]     *Id.*

the UK.[57]  Al Fawwaz asserts that al Massari, like al-Faqih, would testify about the Saudi dissident movement and that the satellite telephone at issue in the case was used to protect ARC members from the Saudi authorities.[58]  Specifically, al Fawwaz contends that al Massari helped the ARC set up its satellite telephone lines in order to protect its members and that al Massari's own dissident organization used the same protocol.[59]  Al Massari allegedly was active in the ARC early in the organization's existence and allegedly would testify that it was a dissident organization that kept the identities of its forty to fifty members secret to protect them from the Saudi Security Service.[60]

The proposed testimony would not be material.  Al Fawwaz has not sustained his burden of providing a foundation for al Massari's proposed testimony about either the ARC's nature or the purpose or use of the satellite telephone.  That al Massari at one time was involved with the ARC does not support a finding that he would have personal knowledge of any of the pertinent facts – for example, that it was *not* an al Qaeda front.  Testimony that there were secret members and that the ARC served as a dissident organization does not make it any less likely that the organization also served al Qaeda.  Similarly, al Massari's belief that the satellite telephone was intended for X purpose or routinely used for Y purpose does not make it any less likely that it was used also by bin Laden or other al Qaeda members for purposes related to criminal activity.

---

[57]

*Id.* ¶ 14.

[58]

DI 1373 ¶ 7.

[59]

*Id.*

[60]

*Id.*

6.     *Mark Huband*

Huband is a former journalist who lives in the UK and allegedly would testify that al Fawwaz told him that the ARC was not associated with bin Laden's 1996 Declaration.[61]  Huband apparently "cannot promise" that he will come to the United States to testify at trial.[62]  His proposed testimony is not material and, in any case, as discussed above in regard to Bary's motion, uncertainty about a witness' schedule or willingness to travel does not render him or her unavailable.

7.     *Abdullah Anas*

Anas is living in the UK under a grant of asylum.[63]  He allegedly knew Usama bin Laden personally and would testify to bin Laden's role as a dissident and relief worker during the war between Afghanistan and the Soviet Union.[64]  Such testimony is said to support an argument that al Fawwaz's dealings with bin Laden were with bin Laden the dissident, not bin Laden the al Qaeda terrorist.  Al Fawwaz states also that Anas can testify about the meaning of giving *bayat*, and that the ARC was an organization independent of al Qaeda with "at least three other members."[65]  Anas allegedly refuses to travel to the United States "without guarantees of his safety."[66]

---

[61]     DI 1327 ¶ 12.

[62]     *Id.* ¶ 13.

[63]     *Id.* ¶ 16.

[64]     *Id.* ¶¶ 17-18.  Al Fawwaz states that Anas last saw bin Laden in 1995.

[65]     *Id.* ¶ 19; DI 1371 at 9.

[66]     DI 1327 ¶ 21.

Anas's proposed testimony is not material. Testimony that bin Laden at one time was a dissident and a relief worker rather than or in addition to being the leader of a terrorist organization would not in any sense exculpate al Fawwaz. This is particularly so in light of the fact that Anas is alleged last to have seen bin Laden in 1995 and, even then, only once. This was before bin Laden's alleged "turning point" from a dissident to a terrorist in 1996.

Al Fawwaz has not explained what Anas would say about the meaning of giving *bayat* or the basis of his alleged knowledge. Moreover, any such testimony theoretically could have some bearing on al Fawwaz's argument that he did not do so, but the Court is reasonably certain that there are less burdensome methods of obtaining evidence concerning the definition of *bayat*. Al Fawwaz's argument that Anas should be permitted to testify about the ARC and its members is unpersuasive also. Al Fawwaz does not explain the basis of Anas's purported knowledge and, as discussed above, such testimony would not be material.

Finally, unavailability has not been established. Al Fawwaz has not explained if or how he has attempted to mollify Anas's safety concerns. Indeed, it appears that he even has not ascertained their exact nature.[67]

### 8. *Document Requests*

Al Fawwaz requests this Court's assistance in obtaining his passport and a certified copy of his immigration file from the United Kingdom Home Office, which handles immigration matters. He argues that his immigration file details his reasons for being in the United Kingdom, his

---

[67] *Id.* ("Mr. Anas has advised me that he refuses to come to the United States without guarantees of his safety, which I understood to include guarantees that his asylum status will not be compromised.").

position as a Saudi dissident, and that his application did not go forward due to a new antiterrorism prevention law in the UK.[68]

Al Fawwaz has failed to explain how or why he has a right to these documents under any applicable rule of discovery. The Court will not request another sovereign nation to turn over documents to which the defendant would have no clear right were those documents located here in the United States.

*Conclusion*

For the foregoing reasons, Bary's motion [DI 1296] is denied. Al Fawwaz's first motion [DI 1323] is granted. Al Fawwaz's second motion [DI 1325] is granted to the extent that he may take Rule 15 depositions of Naomi Wood and Abdel Bari Atwan, each of which shall be confined to the subjects that this Court here has concluded are material. It is denied as to his other Rule 15 deposition requests and document requests. Al Fawwaz's third motion [DI 1326] is denied.

The Court will issue the proposed letters rogatory for Paul Banner and Banner's replacement. Counsel shall submit an agreed form of letters rogatory as to Wood, who has not cooperated with al Fawwaz's counsel.

SO ORDERED.

Dated:        February 18, 2014

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[68] DI 1327 ¶ 4; Def. Br. [DI 1325], at 6.