UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
|      - v. - | :      98 Cr. 1023 (LAK) |
| KHALID AL FAWWAZ, | : |
|     a/k/a "Khaled Abdul Rahman Hamad al Fawwaz," | : |
|     a/k/a "Abu Omar," | |
|     a/k/a "Hamad," | : |
|                 Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S OPPOSITION TO DEFENDANT FAWWAZ'S RENEWED MOTION FOR A RULE 15 DEPOSITION OF DR. MUHAMMAD AL MASSARI

PREET BHARARA
United States Attorney
Southern District of New York
for the United States of America

Sean S. Buckley
Adam Fee
Nicholas J. Lewin
Stephen J. Ritchin
Assistant United States Attorneys
    – Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

DISCUSSION .................................................................................................................................. 2

    I.    Relevant Legal Standards ................................................................................................ 2

        A.  Motions For Reconsideration of a Court's Earlier Decision ........................................... 2

        B.  Rule 15 Depositions ........................................................................................................ 4

    II.   Fawwaz Has Not Satisfied the High Standards for a Motion for Reconsideration or a Rule 15 Deposition with Respect to al Massari............................................................................ 6

CONCLUSION............................................................................................................................... 15

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum in opposition to defendant Khalid al Fawwaz's "renewed" motion for a Rule 15 deposition of Dr. Muhammad Al Massari. For the reasons set forth below, the motion should be denied.

Although not styled as such, this is a second motion for reconsideration of the Court's February decision denying Fawwaz's request for a Rule 15 deposition of al Massari, and thus Fawwaz's third request for the same relief. Yet Fawwaz fails – with respect to both of the categories of "new information" on which his motion is based – even to attempt to make the required showing that this "new information" was previously unavailable to him despite the exercise of due diligence. He does not explain why due diligence would not have revealed during his first interview of al Massari in October of last year the "facts" Fawwaz says he learned from al Massari during a more recent interview. Nor does he explain why due diligence, in particular more prompt translation, would not have revealed the "facts" allegedly "disclosed in recently translated" documents of the Advice and Reformation Committee (the "ARC"). Renewed Br. (DI 1681) at 2.[1]

Nor has Fawwaz made the required showing that "manifest injustice" will result if the

---

[1] "Renewed Br." refers to the motion and memorandum of law, filed on August 3, 2014, in support of Khalid al Fawwaz's renewed motion for a Rule 15 deposition of Dr. Muhammad Al-Massari (DI 1681); "Kirby Renewed Decl." refers to the declaration of David V. Kirby, filed on August 3, 2014, in support of Khalid al Fawwaz's renewed motion for a Rule 15 deposition of Dr. Muhammad Al-Massari (DI 1682); "Al Massari Decl." refers to the declaration of Dr. Muhammad Al Massari, filed on August 3, 2014 as Exhibit A to the Renewed Kirby Decl. (DI 1682-1); "Reconsideration Br." refers to the motion and memorandum of law, filed on March 14, 2014, in support of Khalid al Fawwaz's motion for reconsideration (DI 1543); "Rule 15 Br." refers to the amended Rule 15 motion and memorandum of law, filed on September 26, 2013, in support of Fawwaz's Rule 15 motion to depose witnesses in the United Kingdom (DI 1325); "Kirby Rule 15 Decl." refers to the amended declaration of David V. Kirby, filed on September 26, 2013 in support of Fawwaz's Rule 15 motion (DI 1327); "Kirby Rule 15 Reply Decl." refers to the reply declaration of David V. Kirby, filed on November 4, 2013, in support of Fawwaz's Rule 15 motion (DI 1373); and "Reply Rule 15 Br." refers to the reply memorandum of law, filed on November 4, 2013, in support of Fawwaz's Rule 15 motion (DI 1371).

Court opts not to reconsider, for the second time, its earlier decision. It remains plain, after the submission of a declaration from al Massari with this motion, that he was not even a member of, let alone a decision maker within, the ARC – and thus lacks the personal knowledge necessary to testify about the true nature of that organization or why it chose to set up a secure MCI telephone system for those who wished to call it. Fawwaz's new claim that al Massari can testify about a conversation the two men had "very shortly" after the 1996 Declaration of Jihad was issued that will shed light on Fawwaz's state of mind when he learned of the Declaration's issuance is belied by al Massari's description of that conversation. Fawwaz plainly did not speak with al Massari in the immediate wake of the Declaration's release, but instead only after sufficient time had elapsed to allow Fawwaz to have decided what he would do about the issuance of the Declaration and to have formulated arguments to support that decision. And the recently translated ARC documents on which Fawwaz relies do not in any way suggest that al Massari should be permitted to testify. If, as Fawwaz claims, those documents show that ARC was an organization of substance, dedicated to peaceful reform in Saudi Arabia, that does not make al Massari any more competent to testify about the true nature of the ARC or why it chose a certain phone line, nor does it make his proffered testimony any more "material" or "necessary to prevent a failure of justice" than it was when that testimony was first proffered. *United States* v. *Cohen,* 260 F.3d 68, 78 (2d Cir. 2001).

## DISCUSSION

### I. RELEVANT LEGAL STANDARDS

#### A. Motions for Reconsideration of a Court's Earlier Decision

In the absence of a "specific federal rule that governs criminal reconsideration motions, courts 'typically adopt the established standards which govern such motions in a civil context as set forth in the Federal Rules of Civil Procedure, applicable local rules, and related case law.'"

2

*United States* v. *Williams*, No. 98 Cr. 834 (JFK), 2010 WL 749817, at *1 (S.D.N.Y. Mar. 4, 2010) (quoting *United States* v. *Manragh*, No. 03 Cr. 1121 (DRH), 2006 WL 2239053, at *1 (E.D.N.Y. Aug. 4, 2006)).  Whether such a motion is styled a motion for reconsideration or a renewed motion, the applicable standard is the same.  *E.g.*, *Vornado Realty Trust* v. *Castlton Environmental Contractors, LLC,* No. 09 Civ. 4823 (WFK)(JO), 2013 WL 5719000, at *1 (E.D.N.Y. Oct. 18, 2013) ("the standard for considering a renewed motion for summary judgment is the same as that for a motion for reconsideration, as both are governed by the 'law of the case' doctrine") (citations omitted).

"The standard for granting . . . a motion [for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader* v. *CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995).  *See* Local Criminal Rule 49.1(d) (a memorandum setting forth "the matters or controlling decisions which counsel believes the Court has overlooked shall accompany" a motion for reconsideration); Local Civil Rule 6.3 (requiring service of a memorandum described identically to accompany a notice of motion for reconsideration).  "Reconsideration is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"  *United States* v. *Pena Ontiveros*, 07 Cr. 804 (RJS), 2008 WL 2446824, at *5 (S.D.N.Y. June 16, 2008) (quoting *Sompo Japan Ins. Co. of Am.* v. *Norfolk S. Ry. Co.*, No. 07 Civ. 2735 (DC), 2008 WL 2059324, at *2 (S.D.N.Y. May 15, 2008)).  As this Court has noted, "a party seeking reconsideration is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings."  *In re Rezulin Products Liability Litigation*, 224

3

F.R.D. 346, 349 (S.D.N.Y. 2004) (internal quotation marks and citations omitted). "[A] motion [for reconsideration] is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'" *United States* v. *Peterson*, No. 12 Cr. 409 (PAE), 2012 WL 5177526, at *1 (S.D.N.Y. Oct. 19, 2012) (quoting *Associated Press* v. *U.S. Dep't of Defense*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005)), *aff'd*, 559 Fed. App'x. 92 (2d Cir. 2014); *see Shrader* v. *CSX Transp., Inc.,* 70 F.3d at 257 ("a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided"). It has "been said that courts 'should not revisit a prior order unless there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."'" *Peterson*, 12 Cr. 409 (PAE), 2012 WL 5177526, at *1 (quoting *United States* v. *Gambardella*, No. 10 Cr. 674 (KBF), 2011 WL 6314198, at *3 (S.D.N.Y. Dec. 15, 2011), which quoted *Virgin Atl. Airways, Ltd.* v. *Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). Moreover,

> [w]hen newly discovered evidence is the basis for reconsideration, the proponent must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered. The party moving for reconsideration based on the newly discovered evidence must show that (1) the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support, and (2) manifest injustice will result if the court opts not to reconsider its earlier decision.

*In re Rezulin Products Liability Litigation*, 224 F.R.D. at 350. *Accord Vornado Realty Trust*, 2013 WL 5719000, at *3.

### B.     Rule 15 Depositions

Federal Rule of Criminal Procedure 15 allows for pretrial depositions in criminal cases only in "exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1); *see United States* v. *Drogoul*, 1 F.3d 1546, 1551 (11th Cir. 1993) ("Depositions generally are

4

disfavored in criminal cases"). The burden is on the party seeking a Rule 15 deposition to establish that such exceptional circumstances exist and that injustice will result if the motion is denied. *United States* v. *Whiting*, 308 F.2d 537, 541 (2d Cir. 1962); *see United States* v. *Kelley*, 36 F.3d 1118, 1124 (D.C. Cir. 1994). Specifically, "[a] movant must show that (1) the prospective witness is unavailable for trial, (2) the witness' testimony is material, and (3) the testimony is necessary to prevent a failure of justice." *Cohen,* 260 F.3d at 78 (citation omitted).

Thus, the moving party must do more than show that the testimony sought is relevant to the case. *United States* v. *Ismaili*, 828 F.2d 153, 161 n.6 (3d Cir. 1987). A moving defendant must typically show, beyond "unsubstantiated speculation," that the testimony sought "exculpates the defendant." *Kelley*, 36 F.3d at 1125 (holding that denial of depositions of potential government witnesses not an abuse of discretion where anticipated testimony, although relevant, was not exculpatory) (internal quotation marks and citation omitted); *see Ismaili,* 828 F.2d at 161 (holding that a district court cannot abuse its discretion in denying a Rule 15 deposition where the testimony "could not negate the crux of the government's indictment"); *United States* v. *Esquivel*, 755 F. Supp. 434, 439 (D.D.C. 1990) ("a defendant typically demonstrates the 'exceptional circumstances' necessary for success on a Rule 15(a) motion by some preliminary showing that the testimony will exculpate him") (citations omitted)*; United States* v. *Merritt*, No. 90 Cr. 767 (JSM), 1991 WL 79235, at *5 (S.D.N.Y. May 7, 1991) (denying Rule 15 deposition request where "the defendants have made no showing that the deponents' testimony would be exculpatory"). Moreover, a motion to take testimony that is cumulative is properly denied, *United States* v. *Stein*, 482 F. Supp. 2d 360, 365 (S.D.N.Y. 2007) (citing *United States* v. *Grossman*, No. S2 03 Cr. 1156 (SHS), 2005 WL 486735, at *3 (S.D.N.Y. March 2, 2005)), as is one to take inadmissible hearsay. *Grossman*, 2005 WL 486735, at *3 (citations omitted).

5

## II. FAWWAZ HAS NOT SATISFIED THE HIGH STANDARDS FOR A MOTION FOR RECONSIDERATION OR A RULE 15 DEPOSITION WITH RESPECT TO AL MASSARI

In February, the Court denied Fawwaz's first motion for a Rule 15 deposition of al Massari because al Massari's "proposed testimony would not be material." *United States* v. *Fawwaz*, 98 Cr. 1023 (LAK), 2014 WL 627083, *6 (S.D.N.Y. Feb. 18, 2014) (DI 1490). In April, the Court denied Fawwaz's motion for reconsideration of that decision because the Court was "not persuaded by Al Fawwaz's attempts to reassert arguments he already made and to posit factual errors that, even had they occurred, would have been insignificant." *United States* v. *Fawwaz*, 98 Cr. 1023 (LAK) (S.D.N.Y. Apr. 16, 2014) (DI 1604), at 1. Fawwaz now makes his third request for the same relief, this time styling his motion a "renewed" motion for a Rule 15 deposition of al Massari. Renewed Br. (DI 1681); Kirby Renewed Decl. (DI 1682).

Fawwaz's explanation for bringing what is, in effect, a motion for reconsideration of the ruling on his prior motion for reconsideration, is that his counsel recently "had an opportunity to again meet with and conduct an in-depth interview of" al Massari. Renewed Br. (DI 1681) at 2. Fawwaz says his "renewed application stems from the facts learned in that in-depth interview, contained in the Al-Massari Declaration," as well as facts "disclosed in recently translated documents of the Advice and Reformation Committee appended to the Kirby Declaration." *Id.*

This explanation provides no ground for relief. Fawwaz has not even attempted to show that the "facts" on which he now relies previously were "unavailable despite the exercise of due diligence by the movant in procuring evidentiary support." *In re Rezulin Products Liability Litigaton*, 224 F.R.D. at 350. He does not explain why "facts" learned in a second interview in June 2014, *see* Kirby Renewed Decl. (DR 1682) ¶ 4, could not have been learned during the first interview eight months earlier in October 2013, *see* Kirby Rule 15 Reply Decl. (DI 1373) ¶ 7, or

why documents could not have been translated earlier.  The absence of such an explanation is particularly harmful to Fawwaz's renewed motion given that the proposed subject matters of al Massari's testimony are the same as they have been since Fawwaz first moved to depose him in September of last year.  *Compare* Renewed Br. (DI 1681) at 3 (al Massari's proposed testimony "speaks principally to three issues:  The Advice and Reformation Committee . . . and its composition; the MCI telephone line and the reasons why it was installed; and the 1996 Bin Laden Declaration against the United States and Mr. Al-Fawwaz's reaction to its issuance") *with* Rule 15 Br. (DI 1325) at 12 (al Massari and three other witnesses "will say that the Advice and Reformation Committee existed as an independent entity, pushing for peaceful reform of the government of Saudi Arabia.  Each of these witnesses will testify that Mr. Al Fawwaz ran the ARC London Office and pursued its agenda wholeheartedly.  Indeed, each will testify that Mr. Al Fawwaz was shocked and dismayed that Bin Laden issued his 1996 Declaration," and al Massari's testimony "will refute the government's claims that the telephone security procedures that Mr. Al Fawwaz had to employ to protect the ARC members in Saudi Arabia and elsewhere were actually indicia of terrorism").  *See also* Kirby Rule 15 Reply Decl. (DI 1373) ¶ 7 (al Massari said there "were numerous other members of [the ARC] (he believed some 40 or 50)" and "stated that he helped the ARC set up MCI phone lines for the purpose of protecting the telephone calls made by ARC members living in Saudi to the ARC offices in London from interception by the Saudi Security Services").

       The fact that Fawwaz has recently obtained a declaration from al Massari does not suggest that a renewed application for his deposition is warranted.  To the contrary, motions for reconsideration, and even more so second motions for reconsideration, are not to be based on facts contained in new declarations.  As this Court has noted, the local civil rule governing motions for

reconsideration explicitly provides that "'*[n]o affidavits shall be filed by any party unless directed by the court.*'" *In re Resulin Products Liability Litigation*, 224 F.R.D. at 349 (quoting S.D.N.Y. Civ. R. 6.3) (emphasis in original). Similarly, the applicable local criminal rule calls only for "[a] memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked" to accompany a motion for reconsideration. S.D.N.Y. Crim. R. 49.1(d). The local civil rule, this Court has explained, "aims to achieve the underlying purpose of enhancing the Court's ability to ensure the finality of decision. Accordingly, relief is available under Local Civil Rule 6.3 only if the movant demonstrates that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion. Such a motion may not advance new facts, issues or arguments not previously presented to the Court." *In re Resulin Products Liability Litigation*, 224 F.R.D. at 349 (internal quotation marks and citations omitted).

The other documents on which Fawwaz relies in support of his renewed motion, the "translated documents of the Advice and Reformation Committee appended to the Kirby Declaration," are, for the most part, documents that have been in the defense's possession since 2012. Ten of the twelve appended documents bear Government Exhibit tags or "OEMB" numbers, which indicate that they were part of discovery productions in October through December of 2012. Kirby Renewed Decl. (DI 1682) Exh. B1 (GX1606-T); B2 (GX 1604); C1 (OEMB0124964); C2 (OEMB0124685); C3 (OEMB0124952); C4 (OEMB0124953); D (GX 1626D-T); E3 (OEMB0127240); E4 (OEMB0143243). The two that were not produced by the Government in 2012 are communiques from the Advice and Reformation Committee issued in 1994 titled "The Defeat of Communism in the Arab Peninsula," and "Saudi Unveils its War Against Islam and its Scholars." Kirby Renewed Decl. (DI 1682) Exh. E1 and E2. Both are

8

signed on behalf of the committee by Bin Laden.  *Id.*   These appear to be the "recently translated" ARC documents appended to the Kirby Declaration.  Renewed Br. (DI 1681) at 2.

Fawwaz cites these two documents, as he does the other ten ARC documents, in support of his argument that the ARC was not "a shadowy front, having no purpose," but instead was "an organization of substance, dedicated to peaceful reform in Saudi Arabia."  Renewed Br. (DI 1681) at 7.  The ARC communiques in particular, he claims, "demonstrate that the ARC pushed for change in Saudi Arabia through exhortation and by reasoned religious argument" and not through a call for violent action.  *Id.*  Fawwaz does not, however, explain why the two "recently translated" documents were critical to making this argument or why they were only recently translated.  More fundamentally, he does not explain why these two documents (or any of the other ten) suggest that the Court should allow a deposition of al Massari.  Fawwaz appears to believe that if the ARC issued documents consistent with Fawwaz's theory about its nature, that supports an argument that al Massari should be allowed to testify about the ARC's nature, even though the Court has already ruled that Fawwaz "has not sustained his burden of providing a foundation for al Massari's proposed testimonay about . . . the ARC's nature . . . .  That al Massari at one time was involved with the ARC does not support a finding that he would have personal knowledge of any of the pertinent facts – for example, that it was *not* an al Qaeda front." *Fawwaz*, 98 Cr. 1023 (LAK), 2014 WL 627083 (DI 1490), at *6 (emphasis in original).  But a witness's lack of personal knowledge is not cured, and the materiality of his proposed testimony is not enhanced, by the existence of documents purportedly consistent with a defense theory that the witness would also support.  If the ARC documents submitted with this motion have any bearing on whether al Massari's deposition should be allowed, they suggest that it should not, because Rule 15 "testimony must be non-cumulative of other evidence . . . ." *Fawwaz*, 98 Cr. 1023 (LAK),

9

2014 WL 627083 (DI 1490), at *1.

Nor has Fawwaz made the required showing that "manifest injustice will result if the court opts not to reconsider its earlier decision." *In re Rezulin Products Liability Litigation*, 224 F.R.D. at 350. Fawwaz argues in this motion, as he has before, that al Massari's testimony would demonstrate that the ARC "was not 'Al Qaeda,' but a peaceful, non-violent, dissident group." Renewed Br. (DI 1681) at 9; *cf.* Rule 15 Br. (DI 1325) at 12. Yet Fawwaz again has not sustained his burden of providing a foundation for such testimony. As just discussed, the ARC documents submitted with the motion do not do so. Nor does Al Masari's declaration. He makes no claim that he was even a member of the ARC, let alone someone who participated in the ARC's internal decision-making process. Instead, he describes himself as a co-founder of a different organization who "provided substantial advice on how to run [the ARC] to Mr. Al Fawwaz." Al Massari Decl. (DI 1682-1) ¶¶ 1, 6. Al Massari says that he suggested to Fawwaz using a phone system that would prevent interception or identification of callers by the Saudi authorities, similar to one al Massari used in his own organization, and helped set up such a system with MCI. Al Massari Decl. (DI 1682-1) ¶ 6. He also claims to have "worked on one of the first communiques that the ARC issued" and "suggested names that the ARC might choose." Al Massari Decl. (DI 1682-1) ¶ 7. And through his "interactions with Mr. Al Fawwaz, Mr. Al-Harbi and the ARC," al Massari claims to have become aware of certain facts about the ARC, including the number of its members in Saudi Arabia, the role Fawwaz played in the organization, the role of its leadership council and the names of at least some of the members of that council. Al Massari Decl. (DI 1682-1) ¶¶ 7-8. In other words, al Massari consulted on a few issues at the inception of the ARC's existence – what phone system to use, what name to use and what an early communique should say – and was told other things about the organization by Fawwaz, Al-Harbi and unspecified others.

10

This hardly puts him in a position to testify, based on personal knowledge, about the true nature of the ARC. Even if al Massari's declaration were considered, there is nothing in it that suggests the Court's earlier holding – "[t]hat al Massari at one time was involved with the ARC does not support a finding that he would have personal knowledge of any of the pertinent facts – for example, that it was *not* an al Qaeda front" – must be reconsidered to avoid manifest injustice. *Fawwaz*, 98 Cr. 1023 (LAK), 2014 WL 627083 (DI 1490) at \*6 (emphasis in original).

Fawwaz next argues, as he has before, that al Massari "will provide an explanation of why the [MCI] telephone line was set up . . . It was set up to protect members of the ARC living in Saudi Arabia from detection by the Saudi secret services." Renewed Br. (DI 1681) at 11; *cf.* Rule 15 Br. (DI 1325) at 12. Fawwaz argues that "Dr. Al-Masari set up the telephone line with the aid of his wife and knew why it was set up. He will explain the need for such precautions for groups like the ARC because he ran a similar group, the CDLR." Renewed Br. (DI 1681) at 11. This too is an argument the Court has already considered and rejected, twice. Al Massari cannot know why Fawwaz or the ARC decided to set up the MCI telephone line, he can only know what he believes to be the reason for this decision by others. *See Fawwaz,* 98 Cr. 1023 (LAK), 2014 WL 627083 (DI 1490), at \*5 ("Satellite telephones may be useful to different individuals or organizations for a range of purposes. Evidence that it was the practice of one dissident organization to use satellite telephones for security purposes thus would not negate the government's allegation that the satellite telephone that al Fawwaz allegedly purchased for bin Laden is evidence of criminalit.y"). And al Massari's belief that a particular phone or phone system "was intended for X purpose or routinely used for Y purpose does not make it any less likely that it was used also by bin Laden or

other al Qaeda members for purposes related to criminal activity." *See id*. at *6.[2]

Finally, Fawwaz argues that al Massari can testify about Bin Laden's 1996 Declaration of Jihad and Fawwaz's reaction to it. Fawwaz's arguments on this issue have taken a varied course. As noted above, when he first sought to depose al Massari, Fawwaz argued that al Massari was one of four witnesses who would testify that Fawwaz "was shocked and dismayed that Bin Laden issued his 1996 Declaration." Rule 15 Br. (DI 1325) at 12. That argument presumably was based on Fawwaz's own account, since it was made at a time when al Massari was not responding to requests to meet made by Fawwaz's London counsel. Kirby Rule 15 Decl. (DI 1327) ¶ 15. In Fawwaz's reply papers, he reported that al Massari had by then met with his counsel, Kirby Rule 15 Reply Decl. (DI 1373) ¶ 7, yet he made no mention of al Massari saying he heard or saw Fawwaz's reaction to the issuance of the 1996 Declaration of Jihad. *Id.* ¶¶ 6-8. While Fawwaz renewed in reply his argument that Fawwaz's statements concerning the 1996 Declaration to two other prospective deponents (Atwan and Alani) should be admitted, he did not make the same argument with respect to al Massari. Reply Rule 15 Br. (DI 1371) at 6-7. And when Fawwaz first moved for reconsideration with respect to al Massari he did not argue that al Massari could testify about Fawwaz's reaction to the 1996 Declaration of Jihad. Reconsideration Br. (DI 1543) at 8-10. Now Fawwaz submits, for the first time, a declaration in which al Massari claims he met Fawwaz "very shortly after the Declaration was issued," and perceived him to be "very distressed by issuance of the Declaration (I would describe it as a state of shock)." Al Massari Decl. (DI 1682-1) ¶ 9. Thus, on this issue especially, there has been an extended and varied "dialogue" with the Court culminating in Fawwaz's current attempt to "adduce new evidence in response to the

---

[2] The Court's initial ruling addressed a satellite phone but, as the Court has made clear, the logic of its ruling applies equally to an MCI secure line. *United States* v. *Fawwaz*, 98 Cr. 1023 (LAK) (S.D.N.Y. April 16, 2014) (DI 1604), at 1-2.

court's rulings." *In re Resulin Products Liability Litigation,* 224 F.R.D. at 349 (citations omitted).

As noted above, that attempt should be rejected because a motion for reconsideration "may not advance new facts . . .," and there has been no showing that the "proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support." *Id.* at 349, 350 (internal quotation marks and citations omitted). But even if it were allowed, there would be no basis for concluding that "manifest justice will result if the court opts not to reconsider its earlier decision." *Id.* at 350 (citation omitted).

The Court has addressed the admissibility of Fawwaz's statements about his reaction to the 1996 Declaration of Jihad with respect to two other proposed deponents. Where there was no claim that the statements were made "in the immediate wake of the 1996 Declaration's release," the Court found that the statements do "not fall under the state of mind hearsay exception." *Fawwaz*, 98 Cr. 1023 (LAK), 2014 WL 627083 (DI 1490), at *5 (citation omitted). When, on the other hand, Fawwaz's statements were alleged to have made "'almost immediately' after the 1996 Declaration was published," when Fawwaz "was 'in a state of shock … [he] was literally shaking' and 'said "I disagree with it completely,"'" the Court, for the purposes of the motion, accepted Fawwaz's assertion that the statement was sufficiently proximate in time to the release of the 1996 Declaration to be admissible under Federal Rule of Evidence 803(3), although the Court also noted that "[w]hether that proves to be so must abide the event." *Id.* at 4 (quoting Atwan's 1999 affidavit; citation omitted).

Al Massari claims to have spoken with Fawwaz "very shortly" after the Declaration was issued, although he does not specify what "very shortly" means. Al Massari Decl. (DI 1682-1) ¶ 9. While he echoes Atwan by describing Fawwaz as in "a state of shock," *id.*, unlike Atwan, al

13

Massari does not describe any physical symptoms that suggest such a state. To the contrary, al Massari describes Fawwaz as having already decided what he would do in response to the issuance of the Declaration at the time they spoke – "[Fawwaz] said that he would refuse to distribute it" – and having already formulated reasons for taking that position. *Id.; see id.* ("Bin Laden had *de facto* removed himself from the ARC by issuing the Declaration," "Bin Laden did not consult with the ARC and had put all of the members of the ARC in danger by this statement"). An argument then ensued between the two men, with al Massari saying that Fawwaz should not have been surprised by Bin Laden's action, and Fawwaz "vehemently disagree[ing]" and marshalling arguments to support his position. *See id.* ("Bin Laden did not control the organization," "the Shura Council had substantial power in the ARC" "some of its members made substantial financial contributions to the continuance of the ARC").

> As the Seventh Circuit has noted,
>
> The Advisory Committee Note to [Federal] Rule [of Evidence] 803(3) states that the rule "is essentially a specialized application of Rule 803(1)." The Advisory Committee Note to Rule 803(1) explicitly requires a "substantial contemporaneity of event and statement [to negate] the likelihood of deliberate or conscious misrepresentation." Because of this, we require that statements offered under Rule 803(3) must be "contemporaneous with the . . . event sought to be proven; [therefore] it must be shown that the declarant had no chance to reflect—that is, no time to fabricate or misrepresent his thoughts . . . ."

*United States* v *Macey*, 8 F.3d 462, 467 (7th Cir. 1993) (quoting *United States* v. *Jackson*, 780 F.2d 1305, 1315 (7th Cir.1986)). The conversation as described reflects that Fawwaz did have time to reflect – to make a decision about how he would act in response to the issuance of the Declaration and to formulate reasons to support that decision. Moreover, his conversation with al Massari apparently occurred later in time than his conversation with Atwan (assuming that "almost immediately" after the publication of the 1996 Declaration precedes "very shortly" after its

14

issuance).    This suggests that at least the time necessary for the Atwan conversation to occur must have elapsed before Fawwaz spoke with al Massari.    His statements during his conversation with al Massari, therefore, are not the contemporaneous expressions of Fawwaz's reaction to the issuance of the 1996 Declaration contemplated by Rule 803(3) and constitute inadmissible hearsay.

## **CONCLUSION**

Accordingly, for the foregoing reasons, the Government respectfully submits that the Court should deny Fawwaz's renewed motion for a deposition of al Massari in its entirety.

Dated:      New York, New York
            August 18, 2014

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney

                              By:   /s/
                                    Sean S. Buckley
                                    Adam Fee
                                    Nicholas J. Lewin
                                    Stephen J. Ritchin
                                    Assistant United States Attorneys
                                    (212) 637-2261/1589/2337/2503

15