# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-306-6666 • Cell
888-587-4737 • Fax

33 West 19th Street - 4th Floor
New York, New York 10011
bc@sternheimlaw.com

October 21, 2014

**Via Hand Delivery**

Honorable Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

      Re: <u>United States v. Khalid Al Fawwaz</u>
         S7 98 Cr. 1023 (LAK)

Dear Judge Kaplan:

We submit this letter in response to the government's opposition to our recent request for a continuance of the trial date. For a number of reasons, the government's claims are misleading or unhelpful to the Court.

## The Translation Issues

We have informed the Court that our translator estimates that he will not complete the translation of necessary documents until mid-December at the earliest. The government complains that we have not provided the Court with the number of documents that are untranslated. We do that now. There are approximately 275 pages that must be translated and then reviewed with Mr. Al Fawwaz to enable us to prepare adequately for trial.

We have followed the Court's instruction and have contacted other linguists to assist in this matter. As of yet, we have not found any who presently are able to undertake our workload, but our search continues.

## The Computer Issues

During our conference in Your Honor's Chambers on October 16, 2014, we informed the Court that the government had offered to us the services of SSA Michael Petronella, the supervisor of the FBI's Computer Analysis Response Team ("CART") in New York, to help us access the forensic images of disks recovered during the search of London locations, which we had been unable to access -- files with the .IMG suffix. Based on the government's statements prior to and during the October 16th conference, we were hopeful that we would be able to access the relevant files with the assistance of the FBI; however, yesterday we learned that the government and FBI are themselves unable to open the .IMG files and that the only way to open these files appears to be with the hardware/software that created them -- specifically with the

1

services of Vogon/Kroll OnTrack[1].

During the October 16th conference, Mr. Joslin explained that our expert, Robert Young, had informed us that he was unable to open the .IMG files without the use of Vogon, a proprietary software available only by contracting the services of its manufacture, Kroll Ontrack. Mr. Joslin further explained that the software's maker informed us that they would not be able to assist us as they "had a conflict." In response, AUSA Adam Fee stated, "With respect to this company or software they're referring to, the FBI has not had any issues related to being unable to open files or being prompted to use the software they are referring to as Vogon software" (*See* Transcript of 10/16/14 Conference, p. 3).

On October 17th, Mr. Joslin, Mr. Young, and SSA Petronella conducted a conference call. Mr. Joslin and Mr. Young walked SSA Petronella through our attempts to open the .IMG files and the road-blocks we encountered opening Arabic documents in readable form.      SSA Petronella stated that he was unaware that we were given files in any format other than .e01 files. SSA Petronella stated that he had to look into both these issues.

During the afternoon of October 20th, Mr. Joslin contacted SSA Petronella at which time SSA Petronella informed Mr. Joslin that "the only way that the IMG files can be opened is by using the hardware or software that created them." Mr. Joslin confirmed with SSA Petronella that it "appeared" these files were created by Vogon. SSA Petronella informed Mr. Joslin that it was British law enforcement who made the copies of these disks. When Mr. Joslin asked SSA Petronella if the government and/or FBI had been able to open these files, SSA Petronella stated that he did not know.

Regarding the issue of opening certain documents in a readable Arabic form, SSA Petronella stated that he learned that the FBI was only able to open these using a computer with a "Power PC based-chip set" instead of the Intel processor with which Macintosh computers are now constructed. At the moment, we have not been able to locate such a computer as Macintosh stopped producing computers with Power PC- based chip sets approximately 8 years ago.

Following this phone conversation, Mr. Joslin contacted AUSA Adam Fee and informed him of this conversation. Mr. Fee informed Mr. Joslin that contrary to his statements at the October 16th conference, the government has not been able to open the .IMG files either. Regarding the floppy disks at issue, Fee stated that the government only has the print-outs of documents from these disks that British law enforcement printed, which the government had previously produced to defense counsel.

Though, in its letter of yesterday's date, the government states that, "We are working with the FBI to determine whether we can access the original electronic media and make new forensic

---

[1] For purposes of clarification, Vogon is now part of Kroll Ontrack, a provider of data recovery services and software. According to Kroll Ontrack's website, "Vogon International, a privately-held United Kingdom company, provider of data recovery and specializing in computer forensics" was acquired by Ibas Holdings ASA in 2005. Ibas, in turn, was acquired by Kroll Ontrack in 2006.

copies that do not require the 'Vogon' software" (*see* Govt's 10/20/14 letter, p. 6, fn. 6), the fact that the government is at this point unable to open these files seems to undermine their claim that "the second of these complained-about problems – the computer issue – appears to be on a path to resolution, as was discussed at the conference on October 16" (*see* Govt's 10/20/14 letter, p. 5).

Secondly, the government asserts that "printouts of all of the files on each of these disks were provided to the defense in October 2012, which printouts include the directory listings and other data (e.g., file create date, edit date, etc.) associated with the files in question" (*see* Govt's 10/20/14 letter, p. 6, fn. 6). This, too, is inaccurate. After a review of the database of discovery produced to the defense, we are able to locate print-outs from only 45 disks contained in PLW/35[2]; however, it appears that the government produced to us forensic images of 136 disks contained in PLW/35. A review of the British exhibit log books lists only 37 disks from PLW/35 that were printed. Additionally, in the print-outs of a number of the disks, there does not appear to be a print-out of the file "directory listings," leaving it unclear whether or not all of the documents from the disk were printed. In at least two of the print-outs of the computer disks where we do have print-outs of the "directory listing," it appears that the British government did not print all of the documents on the disk. Thus, it appears the government—contrary to its claims—has not provided printouts from 91 of the disks. It is clear from our review that we do not have printouts of "all of the files on each of these disks," as the government claims we do.

This morning, Mr. Joslin contacted Mr. Buckley about this issue and subsequently provided the government with a list of the print-outs that we do have. Mr. Buckley informed us that he would look into this. We are awaiting the government's clarification, which we expect to receive by the end of the day.

## The Judicial Review Proceedings in the UK

The government raises a number of possible outcomes to the Judicial Review proceedings in the UK, but provides no support for their suppositions regarding these possible outcomes. We are checking with our UK solicitors and barristers to determine what the possible outcomes are, but are confident that they are not as various and illusory as the government suggests. For instance, neither of the Justices of the High Court suggested that the Judicial Review proceedings would not be productive. Indeed, the whole purpose for expediting the review process was to get the matter resolved so that Mr. Al Fawwaz could obtain and use the evidence at trial. If the Justices saw the Judicial Review as simply leading to another action and another action and to a dead end, there would be no reason for expedition in the slightest. As Lord Justice Burnett said, the High Court expected to deal with the matter "before Christmas and with luck a good deal sooner than that." His expectation was not that the High Court would simply deal with some procedural hurdle, but that it would address the heart of the matter—the failure to explain "why the alternative mechanisms explored by UK solicitors as well as in the

---

[2]   PLW/35 refers to an exhibit seized by Paul L. Webber during the Metropolitan Police Service's 1998 search of 94 Dewsbury Street—Mr. Al Fawwaz's home. The exhibit log describes PLW/35 as a "large quantity of computer disks." The forensic image produced to us contains images of 136 disks.

3

US have not been followed," i.e., why the materials were not turned over and procedures developed to address the UK's concerns.[3]

With regard to the Judicial Review procedure, the government tries to parse the procedure so that it appears to contain many steps. This is misleading. For instance, the government suggests that Mr. Al Fawwaz would have to first obtain "permission" to proceed. This is incorrect. To further expedition of the hearing, the High Court has compressed the steps in the process. "Permission" would be argued and decided with the substantive issues in the case during the full hearing in December. Thus, the decision of the High Court would decide both "permission" and the substance of the claim, making the question of "permission" basically academic. Further, the government suggests to this Court that the Judicial Review process is a "slightly expedited" procedure. This is again wrong. Our solicitors inform us that the normal Judicial Review procedures would place the initial hearing out past "Easter," instead of completing the process in two months. So, normally the Judicial Review procedure would not even start for six (6) months. Here, it is to be completed in two (2) months. This is how seriously the UK courts are taking this matter.

Finally, the government suggests that even if Mr. Al Fawwaz was successful in this process, this would not end the matter. Our solicitors tell us that this is incorrect: "The Court will determine whether or not the blanket national security claim is lawful, rational, etc. As such, by close of the JR [Judicial Review] proceedings, the Court will have ruled as to whether or not the documents may lawfully be withheld on national security grounds. . . . Given the court's orders to date, there can be little doubt that if [Mr. Al Fawwaz] were successful in the JR, the Defendant [the UK] would be ordered to make any steps required to comply with the court's order without delay. The Consolidated Grounds request disclosure within seven days of the court order." (Statement from Quist Solicitors, 10/21/14).

We submit that it will deprive Mr. Al Fawwaz due process and effective assistance of counsel to deny the continuance in this extremely unusual situation.    Contrary to the government's contention, the Second Circuit has never "found that the possibility that a defendant might be able to obtain evidence that otherwise is outside the compulsory power of

---

[3]  For this reason, the government's reliance on *United States v. Tin Yat Chin*, 476 F.3d 144 (2d Cir. 2007) is misplaced. There, the government failed to disclose its intent to call a handwriting expert in rebuttal until the day before the defense concluded its case. *Id.* at 145-146. The district court gave defense counsel a one-day continuance to prepare to cross-examine the late-disclosed witness. *Id.* at 146. The Circuit concluded that the defendant was not deprived of due process, as the defendant "was unable to specify with any particularity how he was prejudiced by not receiving a longer continuance." *Id.* The government argues that this case is analogous "given the lack of clarity as to what remedy (if any) Fawwaz would obtain if he did prevail in the judicial review." Gov't 10/20/2014 Ltr. at 3. But the remedy for Mr. Al Fawwaz is clear—an order requiring that the evidence requested in the letters rogatory be disclosed to defense counsel. And unlike in *Tin Yat Chin*, the relief that Mr. Al Fawwaz seeks is tangible—Mr. Al Fawwaz's counsel in the United Kingdom has *seen* UK government representatives holding the requested "file."

4

this Court does not implicate constitutional concerns." Gov't 10/20/2014 Ltr. at 4. The cases that the government relies on to support this contention stand only for the unremarkable proposition that a defendant's Sixth Amendment right to compulsory process is not violated where the court is powerless to provide such process. *See, e.g.*, *United States v. Greco*, 298 F.2d 247 (2d Cir. 1962). In *Greco*, the court rejected the defendant's claim that he had "an *absolute* right [under the compulsory-process clause] to compel the attendance of Canadian witnesses . . ." *Id.* at 251 (emphasis added); *see also Yousef*, 327 F.3d 56, 114 & n.48 (2d. Cir. 2003) (noting that a "District Court's *inability* to subpoena witnesses from the Philippines deprived the defendants of no constitutional right" (emphasis added)).

We are not asking this Court to subpoena foreign witnesses or otherwise take some action that it lacks the power to take. It is manifestly within the Court's power to grant a continuance to allow a reasonable period of time for the UK judiciary to determine whether the letters rogatory are enforceable. And while the court has discretion whether to grant our request, the denial of a continuance in the face of a justifiable request for delay *does* implicate constitutional concerns. *United States v. Mason*, 919 F.2d 139, 139 (4th Cir. 1990) (holding that denial of motion for continuance to allow a reasonable amount of time for the responses to letters rogatory to be returned violated "[t]he due process standard of fundamental fairness[, which] requires that 'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *cf. Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001) (recognizing that "[t]he right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental constitutional right secured by both the Compulsory Process Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.").

**The Classified Materials**

The government does not address the fact that no CIPA hearing has been held and that no ruling has been made on the admissibility of the classified materials. Mr. Al Fawwaz has not seen the materials that the government seeks to use at his trial. We need substantial time to review these materials with Mr. Al Fawwaz. This will take an extended period of time for reasons which we cannot elaborate on here. The government also does not mention that no final translations of a group of those materials have been made. This is critical since there is some concern for the accuracy of the draft translations of the materials.

**Conclusion**

In all, the defense simply is not prepared to go to trial. We require the translation of a number of important documents and have sought those translations in an expeditious manner. The process simply requires more time. Contrary to the government's assertion, the computer issues are not resolved. Indeed, there are numerous files which we still cannot get access to— contained on some 91 computer disks. At the least, we require time to examine those files and determine whether they are important to the defense. Further, we need a substantial amount of time to review the classified materials with Mr. Al Fawwaz when we are allowed to do so. Finally, Mr. Al Fawwaz has a Judicial Review action pending through which there is a substantial chance that he will obtain evidence that he has been seeking for many years. The UK

courts have expedited the action to try to comply as best they can with this Court's schedule. It would be manifestly unfair to proceed to trial and have this material come available within weeks after the trial ended.

In the interests of efficient and effective representation of Mr. Al Fawwaz -- a man facing the possibility of a sentence of life without parole -- in this complex and serious case requiring extensive preparation, defense counsel respectfully request that the Court vacate the currently scheduled trial date, and continue this matter for a time sufficient to allow the classified information issues to be resolved, to allow translations to be completed, to allow the UK judicial review to proceed (and in all likelihood resolve), and to allow time for our computer expert to finish his forensic work.

Your consideration of this request is greatly appreciated.

Respectfully submitted,

*Bobbi C. Sternheim*

BOBBI C. STERNHEIM
DAVID V. KIRBY
BARBARA E. O'CONNOR

cc: Counsel for All Parties
   (*via email*)

6