UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA

       -against-                                                                                         S7 98 Cr. 1023 (LAK)

KHALID AL FAWWAZ, *et al.*,

                      Defendants.

-----------------------------------------------------------x


**REPLY IN SUPPORT OF KHALID AL FAWWAZ'S MOTION IN LIMINE TO PRECLUDE EVIDENCE RECOVERED DURING THE MAY 2, 2011, RAID OF USAMA BIN LADEN'S ABBOTTABAD COMPOUND OR, IN THE ALTERNATIVE, FOR SEVERANCE OR DUAL JURIES**


**ATTORNEYS FOR KHALID AL FAWWAZ**

| | |
|---|---|
| **Bobbi C. Sternheim, Esq.** | **David V. Kirby, Esq.** |
| **John Robinson, Esq.** | **Barbara E. O'Connor, Esq.** |
| **Law Office of Bobbi C. Sternheim** | **174 Battery Street, 3d Floor** |
| **33 West 19th Street – 4th Floor** | **Burlington, VT 05401** |
| **New York, NY 10010** | **802-863-0112** |
| **212-243-1100** | |

## INTRODUCTION

On December 12, 2014, Mr. Al Fawwaz moved to preclude the government from introducing sixteen letters recovered during the May 2, 2011, raid of Usama Bin Laden's Abbottabad compound. In that motion, we argued that the letters were irrelevant to the charges in the indictment against Mr. Al Fawwaz because they neither mentioned Mr. Al Fawwaz nor the crimes with which he is charged. Indeed, were Mr. Al Fawwaz tried alone, it is inconceivable that the government would seek to use the letters to prove Mr. Al Fawwaz's guilt. But recognizing that the letters reference Mr. Al Liby and that the government may try to offer the documents against him, we moved to preclude the letters on the ground that doing so would unduly prejudice the jury against Mr. Al Fawwaz and constructively amend the indictment against him.

The government's response acknowledges that the letters say nothing about Mr. Al Fawwaz's involvement in the charged crimes. As the government recognizes:

> None of [the Abbottabad letters] mentions Fawwaz, either explicitly or by reference. All were written while—and about events occurring during the time when—Fawwaz was imprisoned in the United Kingdom. The Government does not now intend to present proof or to argue: that Fawwaz was involved in writing the Letters; that he is referenced in the Letters; or that he continued to actively participate in the charged al Qaeda conspiracies that continued after his 1998 arrest.

Gov't Resp. at 10, ECF No. 1813.

In a typical case where the government seeks to offer extrinsic evidence that inculpates one defendant but says nothing about a codefendant, the court would analyze (1) whether the evidence is admissible against the defendant pursuant to Rule 404(b) and (2) if so, whether the evidence should nevertheless be excluded because it prejudices the codefendant. If the court ultimately found the evidence to be admissible, the court would instruct the jury that it should not consider the evidence in assessing the codefendant's guilt.

But in the government's view, the court need not consider any of this because the Abbottabad letters are not "extrinsic" evidence at all. Rather, they are "direct evidence of the existence of the charged conspiracies." Gov't Mot. to Admit Abbottabad Letters at 24-25, ECF No. 1804. The letters are "direct" evidence, according to the government, because they "arose out of the same transaction or series of transactions as the charged [conspiracies], [are] inextricably intertwined with the evidence regarding the charged [conspiracies], [and are] necessary to complete the story of the crime on trial." Gov't Mot. at 9 (internal quotation marks omitted).

The government's view, however, ignores the indictment's definition of the charged conspiracies, including the fact that the indictment charges Mr. Al Fawwaz with conspiracies that terminated on May 8, 2000. It is also a view that finds no support in the case law, which provides for the admission of evidence as "direct" evidence of a crime only in limited circumstances and only where it is "manifestly clear" that the evidence is in fact intrinsic proof of the charged crime. The Court should reject the government's attempt to shoehorn the Abbottabad letters into its case against Mr. Al Fawwaz as "direct evidence" of the charged conspiracies.

The Court should then consider the appropriateness of permitting the government to introduce the evidence in a joint trial in light of the prejudice that the letters would present to Mr. Al Fawwaz. The government barely addresses this issue in its response brief, flatly asserting that "[t]here is no . . . risk" of unfair prejudice to Mr. Al Fawwaz. Gov't Resp. at 9. But the prejudice is plain. Simply put, the admission of the Abbottabad letters would transform a trial about a plot to bomb the U.S. embassies in Kenya and Tanzania in 1998 into a referendum on Al Qaeda's terrorist attacks since that time. It would also bolster the credibility of key government

2

witnesses against Mr. Al Fawwaz. There could be no fair trial of Mr. Al Fawwaz under such circumstances. Accordingly, the Court should grant Mr. Al Fawwaz's motion to preclude the government from introducing the letters in this case.[1]

## ARGUMENT

**I. THE ABBOTTABAD LETTERS ARE NOT ADMISSIBLE AS DIRECT EVIDENCE OF THE EXISTENCE OF THE CHARGED CONSPIRACIES**

The government cites four cases in support of its argument that the Abbottabad letters are admissible against both defendants as direct evidence of the existence of the charged conspiracies. Gov't Br. at 2-3 (citing *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998) (per curiam); *United States v. Ibrahim*, 529 Fed. Appx. 59, 62 (2d Cir. 2013) (unpublished opinion); *United States v. Morrow*, 537 F.2d 120, 136 (5th Cir. 1976); and *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993)). None of these cases involves evidence that is comparable to the evidence that the government seeks to offer in this case, and only one of the cases (*Salameh*) addresses the admissibility of evidence used to show the "existence of the conspiracy." *See* 152 F.3d at 112.

*Salameh* involved the admission of "terrorist materials" seized from a defendant, including his "handwritten notebooks on how to make explosives" and a "manual on catalysts, detonators and other bomb ingredients," as evidence of the existence of a conspiracy to bomb the World Trade Center in 1993. *Id.* at 111. Customs officials seized these materials from the

---

[1] The government states that it "does not now seek to offer in its case-in-chief any of the ten documents addressed by the defendant's Motion but not the Government Motion." Gov't Resp. at 1. The government argues that Mr. Al Fawwaz's motion should "[a]ccordingly . . . be denied as moot" insofar as it seeks a ruling that the ten documents not addressed by the government's motion are inadmissible. *Id.* But Mr. Al Fawwaz's motion is not "moot" with respect to these documents. A ruling that the documents are inadmissible would assure that the documents would not come in at trial. The government's statement that it "does not presently seek" to admit the documents provides no such assurance.

3

defendant at John F. Kennedy International Airport on September 1, 1992. *Id.* at 107. A codefendant appealed the district court's ruling that the materials were admissible against all of the defendants, arguing that the materials were substantially more prejudicial than probative. *Id.* at 110. The Circuit affirmed, emphasizing the fact that the district judge scrupulously reviewed each item of evidence and conscientiously balanced the evidence's probative value against the danger of unfair prejudice. *Id.* at 110-11. The Circuit did not address the issue of when evidence of acts occurring outside the time frame of the conspiracy is admissible as "direct" evidence of the charged conspiracy. *Id.* at 111. The appellant did not raise that issue because the codefendant's possession of the terrorist materials occurred *during the time frame of the alleged conspiracy*. *Id.* at 119.

Here, by contrast, the Abbottabad letters reflect conduct occurring ten years after the termination of the charged conspiracies. Evidence of such conduct is admissible as "direct" evidence of the existence of a conspiracy where the conduct (1) "'arose out of the same transaction or series of transactions as the charged [conspiracy]'"; (2) "'is inextricably intertwined with the evidence regarding the charged [conspiracy]'"; or (3) "'is necessary to complete the story of the [conspiracy] on trial.'" *United States v. Mostafa*, 16 F. Supp. 3d 236, 250-51 (S.D.N.Y. 2014) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)); *see also United States v. Lopez*, No. 09 CR. 525 JFK, 2010 WL 3452380, at *3 (S.D.N.Y. Sept. 1, 2010) (finding that evidence of defendants' prior heroin deals was admissible, as the deals were "inextricably intertwined" with the charged drug conspiracy).

There are sound reasons for limiting the admission of uncharged conduct as "direct" evidence to these three categories. Rule 404 seeks to ensure that "a defendant [is] tried for what he did, not for who he is." *United States v. Myers*, 550 F.2d 1036, 1044 (5th Cir. 1977). To this

4

end, Rule 404 limits the purposes for which evidence of "crimes, wrongs, or other acts" (*i.e.*, "extrinsic" evidence) may be used. But "[c]ourts and commentators have struggled with the question of when an act or crime is an 'other' act or crime as defined by Rule 404(b)." *United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984). Given the highly prejudicial nature of extrinsic evidence, it is sensible that courts would admit uncharged conduct as "direct" proof of the existence of a conspiracy only in limited circumstances.

Indeed, courts have repeatedly held that "[w]here it is not *manifestly clear* that the evidence in question is intrinsic proof of the charged crime," the evidence should not be admitted as direct evidence of the existence of the conspiracy; rather, the court should analyze the admissibility of the evidence under Rule 404(b). *United States v. Kassir*, No. 04 CR.356 JFK, 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9, 2009) (emphasis added) (internal quotation marks omitted); *see also United States v. Mostafa*, 16 F. Supp. 3d 236, 251 (S.D.N.Y. 2014) ("A Rule 404(b) analysis is, however, prudent where it is not manifestly clear that the evidence in question is proof of the charged crime."); *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004) (same).

For example, in *Mostafa*, the defendant objected to the admission of an interview of him by a British news service in which he stated that terrorism was "a reaction for oppression" and that military and jihad training "are for Muslims to defend themselves and their principles." 16 F. Supp. 3d at 258. The court noted that the defendant made these statements "several years prior to the charged conduct." *Id.* at 259. Although the court noted that this fact was "not fatal to its admission as direct evidence," the court found it "prudent to also analyze the statement under Rule 404(b) . . . as 'other act' evidence." *Id.*

Similarly, in *United States v. Greer*, 958 F. Supp. 188 (D. Vt. 1997), the government sought to introduce evidence of the defendants' drug smuggling activities between 1975 and 1980. *Id.* at 189. The court held that the evidence was not admissible as direct evidence of the existence of the conspiracy because the indictment alleged that the conspiracy ran from "in or about 1980" to 1993. *Id.* Admitting evidence from 1975 to 1980 as direct evidence of the existence of the conspiracy, the court held, would have constructively amended the indictment against the defendants. *Id.* at 189-91 ("An indictment charging Defendants for conduct "in or about 1980" cannot reasonably be expected to put Defendants on notice that their conduct as early as 1975 is also at issue. . . . [T]he variance is so great as to impair Defendants' ability to adequately prepare their defense."). Thus, the court evaluated the evidence under Rule 404(b). *Id.*

In *United States v. Boyd*, 595 F.2d 120 (3d Cir. 1978), the government offered testimony from an undercover officer that "on three dates after the expiration of the conspiracy charged in the indictment he had discussed with [a] defendant . . . a purchase of [drugs], and that on one date more than two months after the conspiracy ended he had met with [another] defendant . . . for a similar purpose." *Id.* at 126. The government argued that the testimony was admissible as direct evidence of the charged conspiracy because it "cast light on the relationship between [the defendants" and "helped establish a modus operandi further implicating [the defendants] in the prior [drug] scheme." *Id.* But the Circuit held that the trial court was correct to decline to admit the testimony under those theories. *Id.* The Circuit held the evidence to be inadmissible and reversed the convictions, as the "other crimes were part of an entirely different conspiracy." *Id.* at 127; *see also Vargo v. United States*, No. 06-CV-4846(NGG), 2008 WL 2437861, at *6 (E.D.N.Y. June 13, 2008) (noting that extrinsic evidence of robbery "was not so inextricably

6

linked with evidence of the charged conduct for it to be exempt from the reach of Rule 404(b)" and also that since the robbery was not committed "in furtherance of the ends of the conspiracy," it "should not have been admissible to show the existence of the conspiracy"), *aff'd*, 309 F. App'x 485 (2d Cir. 2009)).

As these cases demonstrate, courts are especially sensitive to admitting evidence of uncharged conduct that post-dates the conspiracy as "direct" evidence of the existence of the conspiracy. They do so only when it is "manifestly clear" that the evidence in question is intrinsic proof of the existence of the charged conspiracy. *Kassir*, 2009 WL 976821, at *2. Applying that standard to this case, it is far from clear that the Abbottabad letters are intrinsic proof of the existence of the charged conspiracy. Rather, the letters are evidence of "an entirely different conspiracy." *Boyd*, 595 F.2d at 127. This is so for at least three reasons.

First, the letters reflect events occurring in 2010 and 2011—long after the alleged termination of the charged conspiracy. To be sure, temporal remoteness is not dispositive of whether evidence is "extrinsic" to the charged conspiracy. But it is often the first factor that courts consider. *See, e.g.*, *Mostafa*, 16 F. Supp. 3d at 259; *Greer*, 958 F. Supp. at 189-91; *Boyd*, 595 F.2d at 126-27. The time frame of the conspiracy that the government alleges in the indictment is important for several reasons, including "furnish[ing] the defendant with a sufficient description of the charges against him to enable him to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead double jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge." *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979) (holding indictment invalid where the charged time frame was open-ended). The government could have attempted to charge Mr. Al Fawwaz with participating in a conspiracy

7

that continued lasted after May 8, 2000, but it did not do so, and the consequence of that choice is that evidence of acts occurring after May 8, 2000, must be analyzed as "extrinsic" evidence.

Second, the letters reflect a conspiracy that has a different object than the conspiracies charged in the indictment. Each conspiracy charged in the indictment has as one of its objects to kill Americans at the United States embassies in Kenya and Tanzania. *See, e.g.*, S(7) Indictment ¶ 11. The Abbottabad letters say nothing about the embassy bombings but rather discuss other, distinct terrorist attacks.

Third, the letters reflect a conspiracy that has different members than the conspiracies charged in the indictment. Indeed, a substantial number of the charged co-conspirators were either killed or convicted years before the events described in the Abbottabad letters. And while it is true that the letters "contain . . . references to other charged co-conspirators," Gov't Mot. at 24, the government does not explain why the fact that the letters "reference" other charged co-conspirators helps to establish the existence of the charged conspiracy.

For these reasons, the Abbottabad letters are not admissible as direct evidence of the existence of the charged conspiracies.

## II. IF THE ABBOTTABAD LETTERS ARE ADMITTED, THE RISK OF UNFAIR PREJUDICE TO MR. AL FAWWAZ IS SUBSTANTIAL

Because the Abbottabad letters are not admissible against Mr. Al Fawwaz as direct evidence of the existence of the charged conspiracies, the only arguably possible basis for admitting the letters would be as "other acts" evidence under Rule 404(b)(2) against Mr. Al Liby. As explained in our opening brief on this issue, "[i]n assessing the risk to a co-defendant of prejudice created by evidence admitted in a joint trial solely against another defendant, the trial court must . . . weigh not only the probative value and the risk of unfair prejudice to the defendant against whom the evidence is offered, but also the appropriateness of permitting the

prosecution to introduce evidence in a joint trial." *United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980). Moreover, "the potential for unfair prejudice associated with the admission of Rule 404(b) evidence is magnified when multiple defendants are tried together." *United States v. Gardell*, No. S400CR.632(WHP), 2001 WL 1135948, at *8 (S.D.N.Y. Sept. 25, 2001).

The Abbottabad letters are significantly prejudicial to Mr. Al Fawwaz for two reasons: (1) they discuss brutal terrorist attacks against Americans and thus create a risk that the jury will convict Mr. Al Fawwaz not based on the evidence against him but rather on an emotional basis, and (2) even though they are inadmissible against Mr. Al Fawwaz, the letters bolster the testimony of key government witnesses against Mr. Al Fawwaz and are thus unfairly prejudicial to him, *see Figueroa*, 618 F.2d at 946-47 (reversing defendant's conviction where court admitted evidence against co-defendant in joint trial that corroborated key government witness against defendant).

The government addresses only the first of these two reasons, arguing that the letters are not unfairly prejudicial because "none of the six Letters at issue contain any significant descriptions of violence or ongoing operations against the United States." Gov't Resp. at 10. On this issue, we simply disagree with the government that the descriptions of violence in the letters are insignificant. The June 2010 letter, for example, celebrates the killing of American military personnel in Afghanistan. Gov't Mot. Ex. A at 7-8. In any event, the government states that it "would consent to limited and appropriate redactions" of two of the letters to eliminate references to Al Qaeda operations against the United States, Gov't Resp. at 10 n.14, and such redactions could potentially cure the prejudice arising from the letters' descriptions of terrorist attacks against Americans.

9

But even were the letters redacted, that would not cure the prejudice arising from the letters' tendency to corroborate key government witnesses against Mr. Al Fawwaz. It was precisely this kind of prejudice that the Circuit held sufficient to overturn the convictions in *Figueroa*. 618 F.2d at 946-47; *see also* Fawwaz Mot. to Preclude at 10-14. The government makes no attempt to distinguish *Figueroa* in its response brief, and indeed the case is on all fours insofar as the prejudicial spillover to Mr. Al Fawwaz is concerned. As was the case in *Figueroa*, we expect that the primary evidence of Mr. Al Fawwaz's participation in the charged conspiracies will come from the testimony of government cooperators. The central issue in this case will be the credibility of those cooperators. The Abbottabad letters are prejudicial because they bolster these witnesses' credibility by corroborating their testimony against Mr. Al Liby.

**CONCLUSION**

For the foregoing reasons, the Court should grant Mr. Al Fawwaz's motion to preclude the government from introducing any of the Abbottabad letters and deny the government's motion to admit six of the letters. In the alternative, if the Court finds that the letters are admissible against Mr. Al Liby but not Mr. Al Fawwaz, the Court should sever the two trials or empanel two juries. At a minimum, the letters should be redacted so that only those portions of the letters that the Court finds relevant are allowed into evidence.

Dated: New York, NY
  December 30, 2014

Respectfully submitted,
Attorneys for Khalid Al Fawwaz

*Bobbi C. Sternheim*

Bobbi C. Sternheim
David V. Kirby
Barbara E. O'Connor
John Robinson