UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

        - v. -                              :          (S7) 98 Cr. 1023 (LAK)

KHALID AL FAWWAZ,                           :
    a/k/a "Khaled Abdul Rahman Hamad
           al Fawwaz,"              :
    a/k/a "Abu Omar,"
    a/k/a "Hamad,"                          :

                Defendant.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## **REQUEST TO CHARGE**

PREET BHARARA
United States Attorney
Southern District of New York

Sean S. Buckley
Adam Fee
Nicholas J. Lewin
Stephen J. Ritchin
    Assistant United States Attorneys
    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                    :

           - v. -                              :           (S7) 98 Cr. 1023 (LAK)

KHALID AL FAWWAZ,                           :
     a/k/a "Khaled Abdul Rahman Hamad
          al Fawwaz,"                        :
     a/k/a "Abu Omar,"
     a/k/a "Hamad,"                          :

                Defendant.               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REQUEST TO CHARGE

Pursuant to Rule 30 of the Federal Rules of Criminal Procedure, the Government

respectfully requests the Court to include the following in its charge to the jury.

# TABLE OF CONTENTS

**Request**                                                                                                          **Page**

1.     General Requests ....................................................................................................... 1

2.     Summary of the Indictment ...................................................................................... 2

3.     The Elements of a Conspiracy .................................................................................. 3

4.     The Existence of an Unlawful Agreement ................................................................ 4

5.     Participation in the Conspiracy ................................................................................. 5

6.     Knowledge: Conscious Avoidance ........................................................................... 8

7.     Overt Act .................................................................................................................. 10

8.     Time of Crimes ......................................................................................................... 12

9.     Count One: The Indictment and the Statute ............................................................. 13

10.    Count One: Elements of the Offense and Object of the Conspiracy ........................ 15

11.    Count One: Defendant Engaged in Conspiracy Outside the United States ............... 17

12.    Count Three: The Indictment and the Statute ........................................................... 18

13.    Count Three: Objects of the Conspiracy ................................................................... 20

14.    Count Five: The Indictment and the Statute ............................................................. 22

15.    Count Five: Objects of the Conspiracy ..................................................................... 24

16.    Count Five: Existence of the Conspiracy After April 24, 1996 ................................ 26

17.    Count Five: No Overt Act Requirement .................................................................... 27

18.    Count Five: Directly or Proximately Causing Injury or Death .................................. 28

19.    Count Six: The Indictment and the Statute ............................................................... 30

20.    Count Six: Objects of the Conspiracy ....................................................................... 32

21.    Venue ........................................................................................................................ 33

22.    Persons Not on Trial ................................................................................................. 35

i

23.    Testimony of Expert Witnesses ................................................................. 36

24.    Inferences ................................................................................................. 37

25.    Stipulations .............................................................................................. 38

26.    Defendant's Right Not to Testify [if requested] ........................................ 39

27.    Variance in Dates ..................................................................................... 40

28.    Particular Investigative Techniques Not Required ................................... 41

29.    Testimony of Law Enforcement Officers .................................................. 42

30.    Cooperating Witnesses .............................................................................. 43

31.    Publicity ................................................................................................... 45

32.    Charts and Summaries .............................................................................. 46

33.    Preparation of Witnesses .......................................................................... 47

34.    Evidence Obtained Pursuant To Search .................................................... 48

35.    Uncalled Witnesses Equally Available ..................................................... 49

36.    Use of Recordings And Transcripts .......................................................... 50

37.    Multiple Counts ....................................................................................... 52

38.    Punishment Not to be Considered by Jury ............................................... 53

39.    Sympathy; Oath as Jurors ........................................................................ 54

## Request Number 1

### General Requests

The Government respectfully requests that the Court give its usual instructions to the jury

on the following matters:

       a.      Function of Court and Jury

       b.      Indictment Not Evidence

       c.      Statements of Counsel Not Evidence

       d.      Burden of Proof and Presumption of Innocence

       e.      Reasonable Doubt

       f.      Government Treated Like Any Other Party

       g.      Definitions and Examples of Direct and Circumstantial Evidence

       h.      Credibility of Witnesses

       I.      Right to See Exhibits and Have Testimony Read During Deliberations

       j.      Sympathy: Oath as Jurors

       k.      Verdict Must be Unanimous

## Request Number 2

### Summary of the Indictment

The Indictment in this case charges the defendant, KHALID AL FAWWAZ, in four separate counts: Counts One, Three, Five and Six.   These Counts allege that the defendant participated in conspiracies with the same co-conspirators, but distinct objectives.   Specifically, Count 1 charges a conspiracy to kill United States nationals.   Count 3 charges a conspiracy to murder officers and employees of the United States and internationally protected persons.   Count 5 charges a conspiracy to damage or destroy United States property by means of an explosive. Count 6 charges a conspiracy to destroy national-defense premises of the United States.

> Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Kassir, 04 Cr. 356 (S.D.N.Y. 2009) (JFK); United States v. Abu Jihaad, Crim. 07 Cr. 57 (D. Conn. 2008) (MRK); United States v. Haouari, 00 Cr. 15 (JFK) (S.D.N.Y. 2001); United States v. Hayat, 05 Cr. 240 (GEB) (E.D.Cal. 2006).

**Request Number 3**

**The Elements of a Conspiracy**

As I mentioned, the Indictment charges the defendant with four conspiracies.   These conspiracies all involve the same set of co-conspirators.   It is the different objectives or goals of the conspiracies that make them distinct federal crimes.

Certain elements which you must find to convict the defendant on any of the conspiracy counts are the same for each of the conspiracy counts.   So I will now define certain elements that apply to each of the four conspiracy counts.

The first element of a conspiracy that the Government must prove is the existence of an unlawful agreement, that is, an agreement among two or more persons to violate the law.

The second element of a conspiracy that the Government must prove is that the defendant knowingly and willfully joined the conspiracy, that is, he knowingly and willfully joined in the agreement to violate the law.

The third element that the Government must prove with respect to some, but not all, of the charged conspiracies is that an overt act occurred, that is, that someone within the conspiracy took some action to advance the goal or goals of the conspiracy.

Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Greenberg, et al., S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK).

## Request Number 4

### The Existence of an Unlawful Agreement

Starting with the first element, a conspiracy is an agreement or an understanding of two or more people to accomplish by concerted action a criminal or unlawful purpose.   To establish a conspiracy, the Government is not required to show that two or more persons sat around a table and entered into a solemn compact stating that they have formed a conspiracy to violate the law and setting forth the part to be played by each conspirator.   It is sufficient if two or more persons come to a common understanding to violate the law.

In determining whether there has been an unlawful agreement, you may judge acts and conduct of the alleged co-conspirators as well as the defendant that are done to carry out an apparent criminal purpose.

In short, the Government must prove that at least two alleged conspirators came to a mutual understanding, either spoken or unspoken, to violate the law in the manner charged in the Indictment.   The goal of the conspiracy—the way in which the law would be violated—is called the object of the conspiracy.   I will define those objects, or goals, when I instruct you on each of the four conspiracies alleged in the Indictment.

If the Government fails to prove that there was a conspiracy that had the object charged in that count as an objective, then you must find the defendant not guilty on that conspiracy count. However, if you unanimously find beyond a reasonable doubt that the conspirators agreed to accomplish the object charged in that conspiracy count, then the existence of the unlawful agreement element will be satisfied for that count.

> Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Greenberg, et al., S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK).

### Request Number 5

### Participation in the Conspiracy

The Government must prove that the defendant unlawfully, willfully, and knowingly entered into the conspiracy with a criminal intent—that is, with a purpose to violate the law—and agreed to take part in the conspiracy to promote and cooperate in its unlawful objective.

Now, as to this element, the terms unlawfully, willfully, and knowingly mean that you must be satisfied that in joining the conspiracy, assuming you find that the defendant did join the conspiracy, the defendant knew what he was doing.   That is, that he took the actions in question deliberately and voluntarily.

"Unlawfully" means simply contrary to law.   The defendant need not have known that he was breaking any particular law or any particular rule.   He need only have been aware of the generally unlawful nature of his actions.

An act is done "knowingly" if it is done purposely and deliberately and not because of mistake, accident, negligence or other innocent reason.   An act is done "willfully" if it is a voluntary and intentional act.   That is, the defendant's actions must have been his conscious objective rather than the product of a mistake or an accident or mere negligence or some other innocent reason.

Now, I have talked about knowledge.   Knowledge is something to be inferred from the proven facts.   We do not yet have any way of looking into somebody's mind and knowing what the person is thinking.   However, you have before you evidence of certain acts that are alleged to have been taken by the defendant or that took place in his presence.

Now, it is not necessary that the defendant be fully informed as to all the details of an alleged conspiracy in order for you to infer knowledge on his part.   To have guilty knowledge, the defendant need not have known the full extent of the conspiracy.   He need not have known all of

5

its activities.   It is not even necessary that the defendant know or be acquainted with all of the participants in the conspiracy.   In fact, the defendant may know only one other member of a conspiracy and still be a co-conspirator.

The duration and the extent of the defendant's participation in a conspiracy has no bearing on the issue of guilt.   The defendant need not have joined a conspiracy at the outset.   The defendant may have joined it at any time in its progress, and the defendant still will be held responsible for everything that was done before he joined and everything that is done while the conspiracy continues to exist unless and until he affirmatively quits the conspiracy.

You have heard testimony during the trial about certain organizations, like al Qaeda and others.   The conspiracies charged in the Indictment are alleged to have been formed by members and also nonmembers of these organizations.   You need not find that the defendant was a member of al Qaeda or any other organization to find that the defendant was a member of the conspiracy in question.

Every participant in the conspiracy may perform separate and distinct acts.   They may perform them at different times.   Some conspirators play major roles.   Other conspirators play minor roles.   An equal role or an important role is not what the law requires.   In fact, even a single act can be sufficient to make a defendant a participant in an illegal conspiracy.

I do want to caution you, however, that the mere association by one person with another person does not make that person a member of a conspiracy, even when coupled with knowledge that a conspiracy is under way.   Mere presence at the scene of a crime, even coupled with knowledge that a crime is taking place, is not enough to support a conviction.   In other words, knowledge without participation is not sufficient.   What is necessary is that the defendant participate in the conspiracy with knowledge of its unlawful purpose and with an intent to aid in the accomplishment of its unlawful objectives.

6

In sum, the defendant, with an understanding of the generally unlawful nature of the conspiracy must intentionally have engaged, advised, or assisted in the conspiracy for the purpose of furthering its illegal objective.   The defendant thereby becomes a knowing and a willing participant of the unlawful agreement: in other words, the defendant thereby becomes a co-conspirator.

A conspiracy once formed is presumed to continue until its objective is accomplished or until there is some affirmative act of termination by its members.   So too, once a person is found to be a participant in the conspiracy, that person is presumed to continue being a participant in the venture until the venture is terminated, unless it is shown by some affirmative proof that the person withdrew and dissociated himself from it.

> Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Salazar-Espinosa, S3 05 Cr. 517 (S.D.N.Y. 2007) (LAK).

**Request Number 6**

**Knowledge: Conscious Avoidance**

Now, in instructing you this far with respect to conspiracy, I have talked to you about the concept of knowledge.   I need to say one more thing about that concept.

In determining whether the defendant acted with the necessary knowledge or intent, you may consider whether the defendant deliberately closed his eyes to what otherwise would have been clear.   I told you before that acts done knowingly must be the product of a defendant's conscious intention, not the product of carelessness or negligence.   A person, however, cannot willfully blind himself to what is obvious and disregard what is plainly before him.   A person may not intentionally remain ignorant of facts that are material and important to his conduct in order to escape the consequences of criminal law.

If you find beyond a reasonable doubt that the defendant intentionally participated in a conspiracy, but that the defendant deliberately and consciously avoided learning or confirming certain facts about the specific objectives of the conspiracy, then you may infer from his willful and deliberate avoidance of knowledge that the defendant did understand the objectives or goals of the conspiracy.

We refer to this notion of blinding yourself to what's staring you in the face as "conscious avoidance."   An argument of "conscious avoidance," however, is not a substitute for proof.   It is simply another factor you may consider in deciding what the defendant knew.

There is a difference between knowingly participating in a conspiracy on the one hand and knowing the objects or the purpose of the conspiracy on the other hand.   Conscious avoidance cannot be used as a substitute for finding that the defendant knowingly joined the conspiracy, knew that he was becoming a party to an agreement to accomplish an alleged illegal purpose.   It is, in fact, logically impossible for a defendant to join a conspiracy unless he knows the conspiracy

8

exists.   The defendant must know that the conspiracy is there.

However, in deciding whether the defendant knew the objectives of the conspiracy, you may consider whether the defendant was aware of a high probability that the objectives of the conspiracy were to commit the crime or crimes charged as the object of the conspiracy, and nevertheless participated in the conspiracy.   You must judge from all the circumstances and all the proof whether the Government did or did not satisfy its burden of proof beyond a reasonable doubt.

So, in other words, if you find that the defendant was aware of a high probability that a fact was so, and that the defendant acted with deliberate disregard of the facts, you may find that the defendant acted knowingly.   However, if you find that the defendant actually believed the fact was not so, then he may not have acted knowingly with respect to whatever charge you are considering.

Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Greenberg, et al., S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK); United States v. Usama Bin Laden, et al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).

**Request Number 7**

**Overt Act**

The third element that the Government must prove beyond a reasonable doubt for those conspiracy counts that require it—in this case, Counts 1, 3, and 6—is that at least one of the conspirators, not necessarily the defendant, committed at least one overt act in furtherance of the conspiracy.  In other words, there must have been something more than an agreement—some overt step or action must have been taken by at least one of the conspirators in furtherance of the conspiracy.  The overt act element, to put it another way, is a requirement that any agreement went beyond the mere talking stage, the mere agreement stage.

The Government may satisfy any overt act element by proving that at least one overt act was committed in furtherance of the alleged conspiracy.

Similarly, it is not necessary for the Government to prove that each member of the conspiracy committed or participated in an overt act.   It is sufficient if you find that at least one overt act was in fact performed by at least one conspirator, whether the defendant or another co-conspirator, to further the conspiracy within the time frame of the conspiracy.   Remember, the act of any one of the members of a conspiracy, done in furtherance of the conspiracy, becomes the act of all the other members.  To be a member of the conspiracy, it is not necessary for the defendant to have committed an overt act.

In addition, an overt act alleged in the Indictment need not have been committed at precisely the time alleged in the Indictment.  It is sufficient if you are convinced beyond a reasonable doubt that it occurred at or about the time and place stated.

The overt act must have been knowingly done by at least one conspirator in furtherance of one of the objects of the conspiracy, as charged in the Indictment.   In this regard, you should bear in mind that an overt act, standing alone, may be an innocent, lawful act.   Frequently, however, an

10

apparently innocent act sheds its harmless character if it is a step in carrying out, promoting, aiding, or assisting a conspiratorial scheme.   You therefore are instructed that the overt act does not have to have been an act which in and of itself is criminal or constitutes an objective of the conspiracy.

In sum, if you find that the Government has met its burden on all three elements on any of Counts 1, 3 and 6—or the first two elements for Count 5, which does not require an overt act—then you should find the defendant guilty of conspiring to accomplish the unlawful objectives alleged in the particular count you are considering.   If you find that the Government has not met its burden with respect to all of the necessary elements—that is, if you are not convinced beyond a reasonable doubt that the conspiracy in question existed; or, assuming it existed, you are not convinced beyond a reasonable doubt that the defendant knowingly and willfully became a member of that conspiracy; or, assuming it existed and that an overt act is required, you are not convinced beyond a reasonable doubt that at least one conspirator knowingly committed an overt act in furtherance of the conspiracy—then you should find the defendant not guilty on the count in question.

Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Greenberg, et al., S1 05 Cr. 0888 (S.D.N.Y. 2008)(LAK)

**Request Number 8**

**Time of Crimes**

The Indictment charges that the conspiracies described in the Indictment existed from at least 1991 up to and including on or about May 8, 2000.   The Government is not required to prove that a conspiracy started and ended on those specific dates.   It is sufficient that you find, beyond a reasonable doubt, that the defendant was part of an alleged conspiracy at some point in the time frame alleged.

As I instructed you before: The duration and the extent of a defendant's participation in a conspiracy has no bearing on the issue of guilt.   A defendant need not have joined a conspiracy at the outset.   A defendant may have joined it for any purpose at any time in its progress, and the defendant still will be held responsible for everything that was done before he joined and everything that is done while the conspiracy continues to exist unless and until he affirmatively quits the conspiracy.

> Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Greenberg, et al., S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK).

12

**Request Number 9**

**Count One:**
**Conspiracy to Kill United States Nationals**
**(18 U.S.C. § 2332(b))**

**The Indictment and the Statute**

Count One of the Indictment charges the defendant with conspiring to kill United States

nationals.   Specifically, Count One alleges in relevant part:

> From at least 1991 until [May 8, 2000], in the Southern District of
> New York, in Afghanistan, the United Kingdom, Pakistan, the
> Sudan, Saudi Arabia, Yemen, Somalia, Kenya, Tanzania,
> Azerbaijan, the Philippines and elsewhere out of the jurisdiction of
> any particular state or district, [the defendant, KHALID AL
> FAWWAZ, a/k/a "Khaled Abdul Rahman Hamad al Fawwaz," a/k/a
> "Abu Omar," a/k/a "Hamad," and others,] at least one of whom was
> first brought to and arrested in the Southern District of New York,
> together with other members and associates of al Qaeda, Egyptian
> Islamic Jihad and others known and unknown to the Grand Jury,
> unlawfully, willfully, and knowingly combined, conspired,
> confederated, and agreed to kill nationals of the United States.

> It was a part and an object of said conspiracy that the defendants,
> and others known and unknown, would and did: (i) murder United
> States nationals anywhere in the world, including in the United
> States; (ii) kill United States nationals employed by the United
> States military who were serving in their official capacity in
> Somalia and on the Saudi Arabian peninsula; [and] (iii) kill United
> States nationals employed at the United States Embassies in
> Nairobi, Kenya, and Dar es Salaam, Tanzania, including
> internationally protected persons . . . .

The federal law that the defendant is charged with violating in Count One is a provision of

the United States Code which provides in relevant part:

> Whoever outside the United States . . . engages in a conspiracy to
> kill, a national of the United States . . . in the case of a conspiracy by
> two or more persons to commit a killing that is a murder . . . [and] if
> one or more of such persons do any overt act to effect the object of
> the conspiracy, [is guilty of a crime].

18 U.S.C. § 2332(b)

13

Adapted from the jury instructions in <u>United States</u> v. <u>Abu Ghayth</u>, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); <u>United States</u> v. <u>Ghailani</u>, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK).

**Request Number 10**

**Count One:**
**Conspiracy to Kill United States Nationals**
**(18 U.S.C. § 2332(b))**

**Elements of the Offense and Object of the Conspiracy**

To satisfy its burden of proof with respect to the conspiracy charged in Count One the Government must establish each of the following three elements beyond a reasonable doubt:

First, the existence of the charged conspiracy;

Second, that the defendant knowingly became a member of the conspiracy;

Third, that an overt act occurred; that is, that someone within the conspiracy took some action to advance the goal or goals of the conspiracy.

I already have instructed you as to these three elements of conspiracy, and you should rely on my previous legal instructions here.

I would remind you, however, that while a conspiracy may have more than one unlawful object the Government need only prove the existence of an agreement to further one of the charged objects, not all of them.

Count 1 of the Indictment illustrates this principle.   The alleged objects of the conspiracy charged in Count 1 of the Indictment were to (i) murder United States nationals anywhere in the world, including in the United States, (ii) kill United States nationals employed by the United States military who were serving in their official capacity in Somalia and on the Saudi Arabian peninsula, and (iii) kill United States nationals employed at the United States Embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania, including internationally protected persons. Rather you need only consider whether the Government has proven beyond a reasonable doubt that there existed an agreement between two or more conspirators to further any one of the three alleged objects.   The Government may, but need not, prove the agreement with respect to all three

15

objects.   It need only prove an agreement with respect to one of the objects as long as you agree unanimously as to which specific object it has proved

"Murder" is the unlawful killing of a human being with what is called malice aforethought. To act with malice aforethought means to act willfully, with the intent to kill another person. Malice aforethought is the state of mind that would cause a person to act without regard to the life of another.   To act with malice, one must have acted consciously with the intent to kill another person.   However, the Government does not need to prove a subjective intent to kill—it is enough for the Government to prove reckless and wanton conduct, which conduct so grossly deviated from a reasonable standard of care that the person who undertook such conduct was aware of the serious risk of death he was causing.   The Government need not prove spite, malevolence, hatred, or ill will.

I further instruct you that a "national of the United States" is simply a citizen of the United States.

As I have already instructed you, conspiracy is an entirely distinct and separate offense from the actual commission of the object of the conspiracy.   The actual commission of an object of the conspiracy is not an essential element of the crime of conspiracy.   Thus, the Government does not have to prove that any United States national was actually killed.

> Adapted from Sand, Modern Federal Jury Instructions, Instr. 19-3; and the jury instructions given in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Viktor Bout, 08 Cr. 365 (SAS).   See United States v. Maldonado-Rivera, 922 F.2d 934, 961-62 (2d Cir. 1990) (quoting district court charge setting forth three elements of conspiracy); United States v. Ciambrone, 787 F.2d 799, 810 (2d Cir. 1986) (discussing elements of conspiracy).   See also United States v. Farhane, 634 F.3d 127, 144 (2d Cir. 2011); United States v. Hassan, 742 F.3d 104 (4th Cir. Feb. 4, 2014).

16

**Request Number 11**

**Count One:**
**Conspiracy to Kill United States Nationals**
**(18 U.S.C. § 2332(b))**

**Defendant Engaged in Conspiracy Outside the United States**

With respect to the conspiracy charged in Count One of the Indictment, the Government

also must prove beyond a reasonable doubt that the defendant engaged in the charged conspiracy

while outside of the United States.   Thus, you must find that the conspirators' illegal agreement to

murder United States nationals existed—at least in part—outside of the United States, and that the

defendant knowingly and willfully engaged in that conspiracy while outside of the United States.

> Adapted from the jury instructions in United States v. Abu Ghayth, S14
> 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98
> Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et
> al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).

**Request Number 12**

**Count Three:**
**Conspiracy to Murder**
**(18 U.S.C. § 1117)**

**The Indictment and the Statute**

Count 3 of the Indictment charges the defendant with conspiring to kill officers and employees of the United States and internationally protected persons.   Specifically, Count 3 charges:

> From at least 1991 until [May 8, 2000], in the Southern District of New York, in Afghanistan, the United Kingdom, Pakistan, the Sudan, Saudi Arabia, Yemen, Somalia, Kenya, Tanzania, Azerbaijan, the Philippines and elsewhere out of the jurisdiction of any particular state or district, [the defendant, KHALID AL FAWWAZ, a/k/a "Khaled Abdul Rahman Hamad al Fawwaz," a/k/a "Abu Omar," a/k/a "Hamad," and others], at least one of whom was first brought to and arrested in the Southern District of New York, together with other members and associates of al Qaeda, Egyptian Islamic Jihad, and others known and unknown to the grand jury, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed unlawfully to kill individuals.

> It was a part and an objective of said conspiracy that the defendant[], and others known and unknown, would and did: (i) kill officers and employees of the United States and agencies and branches thereof, while such employees were engaged in, and on account of, the performance of their official duties, and persons assisting such employees in the performance of their duties, . . . . including members of the American military stationed in Saudi Arabia, Yemen, Somalia, and elsewhere, and employees of the United States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania; [and] (ii) kill internationally protected persons.

The statute that the defendant is charged with violating in Count 3 is Section 1117 of Title 18 of the United States Code.   That section reads, in relevant part:

If two or more persons conspire to violate section 1111, 1114, [or] 1116 . . . of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each is guilty of a crime.

Section 1111 makes it a crime to commit murder, which is defined as the unlawful killing of a human being with malice aforethought.   Section 1114 makes it a crime to kill any officer or employee of the United States, while such officer or employee is engaged in or on account of the performance of official duties.   Section 1116 makes it a crime to kill an internationally protected person.

Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).   See also Leonard B. Sand, et al., Modern Federal Jury Instructions, Instr. 19-4.

**Request Number 13**

**Count Three:**
**Conspiracy to Murder**
**(18 U.S.C. § 1117)**

**Objects of the Conspiracy**

In Count 3, in relevant part, the unlawful purposes alleged to be the objects of the conspiracy are to kill officers and employees of the United States and to kill internationally protected persons.   Specifically, Count 3 alleges that the objects of the conspiracy included:   (i) to kill "officers and employees of the United States" and agencies and branches thereof, while such employees were engaged in, and on account of, the performance of their official duties, and persons assisting such employees in the performance of their duties, including members of the American military stationed in Saudi Arabia, Yemen, Somalia and elsewhere, and employees of the United States embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania; and (ii) to kill internationally protected persons.   As I instructed you in connection with Count 1, if you find that the conspirators agreed to accomplish at least one of the objectives charged in this count, then the unlawful purpose element will be satisfied.

It is not necessary for the Government to prove the identity of any specifically contemplated victim or victims of the conspiracy to kill, or the specific location or locations outside the United States where the contemplated killing was to occur.

I instruct you that an individual performs an "official duty" when he or she acts within the scope of what he or she is employed to do.   To murder someone "on account of the performance of their official duties" is to murder someone because he or she performs that duty.

The term "officers and employees of the United States" is self-explanatory.   It includes officers and employees of any agency in any branch of the United States government, including members of the uniformed services.   The parties have stipulated that 41 persons who were inside

20

the American embassy in Nairobi, Kenya, on August 7, 1998, were "officers and employees of the United States," and that two persons who were inside the American embassy in Dar es Salaam, Tanzania, on August 7, 1998, were "officers and employees of the United States."

An "internationally protected person" is a representative, officer, employee or agent of the United States government who at the time and place concerned was entitled, pursuant to international law, to special protection against attack on his person, freedom or dignity.   The parties have stipulated also that two persons who were inside the American embassy in Nairobi, Kenya, on August 7, 1998, fall under the definition of "internationally protected persons."

> Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).   See also Leonard B. Sand, et al., Modern Federal Jury Instructions, Instr. 19-4.

**Request Number 14**

**Count Five:**
**Conspiracy to Destroy Buildings and Property of the United States**
**(18 U.S.C. § 844(n))**

**The Indictment and the Statute**

Count 5 of the Indictment charges the defendant with conspiring to damage maliciously or

destroy United States property by means of an explosive.   Specifically, Count 5 charges:

> From at least 1991 until [May 8, 2000], in the Southern District of New
> York, in Afghanistan, the United Kingdom, Pakistan, the Sudan, Saudi
> Arabia, Yemen, Somalia, Kenya, Tanzania, and elsewhere out of the
> jurisdiction of any particular state or district, [the defendant, KHALID AL
> FAWWAZ, a/k/a "Khaled Abdul Rahman Hamad al Fawwaz," a/k/a "Abu
> Omar," a/k/a "Hamad," and others], at least one of whom was first brought
> to and arrested in the Southern District of New York, together with other
> members and associates of al Qaeda, Egyptian Islamic Jihad, and others
> known and unknown to the grand jury, unlawfully, willfully, and
> knowingly combined, conspired, confederated, and agreed unlawfully to
> maliciously damage and destroy, and attempt to damage and destroy, by
> means of fire and explosives, buildings, vehicles, and other personal and
> real property in whole or in part owned and possessed by, or leased to, the
> United States and departments and agencies thereof, in violation of Title 18,
> United States Code, Section 844 (f)(1).

> It was a part and an objective of said conspiracy that the defendants would
> and did: (i) bomb American facilities anywhere in the world, including the
> American embassies in Nairobi, Kenya, and Dar es Salaam, Tanzania; (ii)
> attack employees of the American Government stationed at those facilities,
> including the American embassies in Nairobi, Kenya, and Dar es Salaam,
> Tanzania; [and] (iii) attack military installations and members of the
> American military stationed at such military installations in·Saudi Arabia,
> Yemen, Somalia and elsewhere with bombs.

The statute that the defendants are charged with violating in Count 5 is Section 844(n) of

Title 18, United States Code.   That statute provides in pertinent part that

22

[A] person who conspires to . . . maliciously damage[] or destroy[], . . . by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, the United States, or any department or agency thereof is guilty of a crime.

18 U.S.C. § 844(n) & (f)(1)

Adapted from the jury instructions in <u>United States</u> v. <u>Ghailani</u>, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); <u>United States</u> v. <u>Usama Bin Laden, et al.</u>, S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).   <u>See also</u> Leonard B. Sand, et al., Modern Federal Jury Instructions, Instr. 19-4.

23

**Request Number 15**

**Count Five:**
**Conspiracy to Destroy Buildings and Property of the United States**
**(18 U.S.C. § 844(n))**

**Objects of the Conspiracy**

In Count 5, the unlawful purposes alleged to have been objectives of the conspiracy included: (i) to bomb American facilities anywhere in the world, including the American embassies in Nairobi and Dar es Salaam; (ii) to attack employees of the American government stationed at those facilities, including the American Embassies in Nairobi and Dar es Salaam; and (iii) to attack military installations and members of the American military stationed at such military installations in Saudi Arabia, Yemen, Somalia and elsewhere with bombs.   If you find, beyond a reasonable doubt, that the conspirators agreed to accomplish any of the unlawful objectives charged in Count 5 of the Indictment, then the illegal purpose will be satisfied.   As I discussed previously, the finding of one unlawful objective is sufficient to satisfy the illegal purpose element provided you agree unanimously on at least one particular unlawful object that the conspirators agreed to accomplish.

I instruct you that to act "maliciously" means to act intentionally or with willful disregard of the likelihood that damage or injury would result from your acts.

The statute defines "explosives" as:

> [G]unpowders, powders used for blasting, all forms of high explosives, blasting materials, fuses (other than electric circuit breakers), detonators, and other detonating agents, smokeless powders . . . and any chemical compounds, mechanical mixture, or device that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion.

18 U.S.C. § 844(j).

24

The statute also includes within its definition of explosives:

> dynamite and all other forms of high explosives, any explosive bomb, grenade, missile, or similar device, including any incendiary bomb or grenade, fire bomb, or similar device, including any device which consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and can be carried or thrown by one individual acting alone.

18 U.S.C. § 232(5).


Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS); see also 1 Sand, Modern Federal Jury Instructions, Instr. 19-4, United States v. Helmsley, 941 F.2d 71, 91 (2d Cir. 1991) (quoting and approving "objectives" language); United States v. Gullett, 75 F.3d 941, 947-948 (4th Cir. 1996) (definition of "maliciously")

**Request Number 16**

**Count Five:**
**Conspiracy to Destroy Buildings and Property of the United States**
**(18 U.S.C. § 844(n))**

**Existence of the Conspiracy After April 24, 1996**

With respect only to the conspiracy charged in Count 5 of the Indictment, the Government must prove beyond a reasonable doubt that the conspiracy existed at some point on or after April 24, 1996, and that the defendant was a knowing and willful member of the conspiracy on or after that date.

This is necessary because, although Count 5 alleges that the conspiracy existed from at least 1991 until the date of the filing of this Indictment, May 8, 2000, the statute under which Count 5 is charged was not enacted until April 24, 1996.

> Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).

**Request Number 17**

**Count Five:**
**Conspiracy to Destroy Buildings and Property of the United States**
**(18 U.S.C. § 844(n))**

**No Overt Act Requirement**

The conspiracy charged in Count 5 has no overt act element.    Thus, you may find that

the elements of Count 5 are satisfied without finding that an overt act was committed.


Adapted from the jury instructions in United States v. Ghailani, S10 98
Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et
al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).

**Request Number 18**

**Count Five:**
**Conspiracy to Destroy Buildings and Property of the United States**
**(18 U.S.C. § 844(n))**

**Directly or Proximately Causing Injury or Death**

If, but only if, you find that the Government has proven, beyond a reasonable doubt, all of the elements of Count 5 as to the defendant, then you must consider an additional question.   You must determine whether the unlawful conduct of a co-conspirator directly and proximately caused the death of at least one person, not a co-conspirator and, if it did, whether the death of that person or persons was reasonably foreseeable to the defendant.

"Directly caused" means that the conduct of a member of the conspiracy directly resulted in the death in question.

"Proximately caused" means that there was a sufficient causal connection between the acts of a member of the conspiracy and the death of any victim.   An act is a proximate cause if it was a substantial factor in bringing about or actually causing death, that is, if the death was a reasonably foreseeable consequence of the conspiracy.

If a death was a direct result or a reasonably probable consequence of an unlawful act of a member of the conspiracy, it was proximately caused by such act.   In other words, if the act of a member of the conspiracy had such an effect in producing the death that reasonable persons would regard it as being a cause of the death, then the act is a proximate cause.

A proximate cause need not always be the nearest cause either in time or in space.   In addition, there may be more than one proximate cause of a death.   Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause a death.   An act of a member of the conspiracy is not a proximate cause of a death if the death was

28

caused by a new or independent source that intervened between the defendant's act and the death, and that produced a result that was not reasonably foreseeable.

For purposes of this inquiry, it is not relevant whether the defendant intended for his unlawful conduct to cause death.   The question being asked of you here is, having already found beyond a reasonable doubt that the defendant committed the offense alleged in Count 5 of the Indictment, do you additionally find that: (1) the unlawful conduct of a co-conspirator directly and proximately caused the death of at least one person, not a co-conspirator and, if it did, (2) that the death of that person or persons was reasonably foreseeable to the defendant.


Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).

**Request Number 19**

**Count Six:**
**Conspiracy to Destroy National-Defense Premises**
**(18 U.S.C. § 2155)**

**The Indictment and the Statute**

Count 6 of the Indictment charges the defendant with conspiring to destroy

national-defense premises, national-defense material, and national-defense utilities of the United

States.   Specifically, Count 6 charges:

> From at least 1991 until [May 8, 2000], in the Southern District of New
> York, in Afghanistan, the United Kingdom, Pakistan, the Sudan, Saudi
> Arabia, Yemen, Somalia, Kenya, and elsewhere out of the jurisdiction of
> any particular state or district, [the defendant, KHALID AL FAWWAZ,
> a/k/a "Khaled Abdul Rahman Hamad al Fawwaz," a/k/a "Abu Omar," a/k/a
> "Hamad," and others], at least one of whom was first brought to and arrested
> in the Southern District of New York, together with other members and
> associates of al Qaeda, Egyptian Islamic Jihad, and others known and
> unknown to the grand jury, unlawfully, willfully, and knowingly, and with
> intent to injure, interfere with, and obstruct the national defense of the
> United States, combined, conspired, confederated, and agreed together and
> with each other to injure, destroy, contaminate, and infect, and attempt to
> injure, destroy, contaminate, and infect national-defense material,
> national-defense premises, and national-defense utilities of the United
> States.

The statute that the defendant is charged with violating in Count 6 is Section 2155 of Title

18 of the United States Code.   That statute provides, in relevant part, that if two or more persons,

acting with the intent to injure, interfere with, or obstruct the national defense of the United States,

conspire to willfully injure, destroy, contaminate, or infect any national-defense material,

national-defense premises, or national-defense utilities, and if one or more such persons do any act

to effect the object of the conspiracy, then those persons are guilty of a crime.

The term "national-defense material" includes arms, ammunition, stores of fuel, supplies,

munitions, and all other articles of whatever description and any part or ingredient thereof,

intended for, adapted to, or suitable for the use of the United States in connection with the national defense.

The term "national-defense premises" includes all buildings, or other places wherein such national-defense material is being stored together with all machinery and appliances therein contained.

The term "national-defense utilities" includes all buildings, structures, cars, vehicles, tanks, boats, helicopters, aircraft, or any other means of transportation whatsoever, in or on which national-defense material, or any troops of the United States, are being or may be transported anywhere in the world.

18 U.S.C. §§ 2151, 2155

> Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).

31

**Request Number 20**

**Count Six:**
**Conspiracy to Destroy National-Defense Material**
**(18 U.S.C. § 2155)**

**Objects of the Conspiracy**

In Count 6, the unlawful purpose alleged to be the objective of the conspiracy is to injure,

destroy, contaminate, or infect national-defense material, premises, or utilities, with the intent to

injure, interfere with, or obstruct the national defense of the United States.

Adapted from the jury instructions in United States v. Ghailani, S10 98
Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et
al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).

**<u>Request Number 21</u>**

**Venue**

Federal law provides rules that govern where, that is, in what district, a criminal prosecution may be brought by the Government.   These are known as "venue" rules.   As you have heard throughout the trial, the acts alleged to have taken place occurred overseas, in various countries.   Nevertheless, American law provides that the defendant may be prosecuted here in the Southern District of New York if you find, by a preponderance of the evidence, that the defendant was first brought into the United States within the Southern District of New York.

I note that on the issue of venue and on this issue alone, the Government need not prove its position beyond a reasonable doubt.   It is sufficient if the Government proves venue by a mere preponderance of the evidence.   To prove something by a preponderance of the evidence means to prove that it is more likely true than not true.   It is determined by considering all of the evidence and deciding which evidence is more convincing.   If the evidence appears to be equally balanced, or if you cannot say upon which side it weighs heavier, you must resolve this question against the Government.

I instruct you that Westchester County, New York is within the Southern District of New York.

You should note that venue is satisfied as to all charges in the Indictment if you find that the defendant or any of his co-conspirators was first brought to the Southern District of New York after his arrest in the United Kingdom.   The parties have stipulated that the defendant was first brought to the Southern District of New York.

> 18 U.S.C. § 3238 ("The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought. . . ."). Adapted from the jury instructions in <u>United States</u> v. <u>Yousef</u>, S12 93

Cr. 180 (KTD), at 5594-96 (Aug. 29, 1996).

**Request Number 22**

**Persons Not on Trial**

If you conclude that other persons may have been involved in criminal acts charged in the Indictment, you may not draw any inference, favorable or unfavorable, towards the Government or the defendant, from the fact that such persons were not named as defendants in the Indictment. Whether a person should be named as a co-conspirator or indicted as a defendant is irrelevant. Your task is limited to considering the charges contained in the Indictment and the defendant before you.

Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Salazar-Espinosa, S3 05 Cr. 517 (S.D.N.Y. 2007) (LAK).

**Request Number 23**

**Testimony of Expert Witnesses**

During the course of this trial, you have heard testimony from what the law calls an expert witness.   An expert witness is someone who, by education or experience, has acquired learning or experience in a specialized area of knowledge.   Such witnesses are permitted to give their opinions as to relevant matters in which they profess to be experts and give their reasons for their opinions.   Expert testimony is presented to you on the theory that someone who is experienced and knowledgeable in a field can assist you in understanding the evidence or in reaching an independent decision on the facts.

Now, your role in judging credibility of witnesses applies to experts as well as to other witnesses.   You should consider the expert opinions that were received in evidence in this case and give them as much or as little weight as you think they deserve.   If you should decide the opinion of an expert was not based on sufficient education or experience or on sufficient data, or if you should conclude that the trustworthiness or credibility of an expert is questionable for any reason, or if the opinion of the expert was outweighed, in your judgment, by other evidence in the case, then you might disregard the opinion of the expert entirely or in part.

On the other hand, if you find the opinion of an expert is based on sufficient data, education or experience, and the other evidence does not give you reason to doubt the expert's conclusions, you would be justified in relying on the expert's testimony.

Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Salazar-Espinosa, S3 05 Cr. 517 (S.D.N.Y. 2007) (LAK).

36

**Request Number 24**

**Inferences**

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.   As you can see from the example I have just given you, the matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation.   An inference is a logical, factual conclusion which you might reasonably draw from other facts that have been proved.   In drawing inferences, you should exercise your common sense.   So, while you are considering the evidence presented to you, you are permitted to draw, from facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

There are times when different inferences may be drawn from facts, whether they are proved by direct or circumstantial evidence.   The Government asks you to draw one set of inferences.   The defendant asks you to draw another.   It is for you, and for you alone, to decide what inferences you will draw.

Here again, let me remind you that, whether based on direct or circumstantial evidence, or upon logical, reasonable inferences drawn from such evidence, you must be satisfied of the guilt of the defendant beyond a reasonable doubt on each element of the count you are considering before you may convict.

Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK).

37

**Request Number 25**

**Stipulations**

Certain stipulations have been entered into by the parties and have been reported to you.

A stipulation is an agreement among the parties that a certain fact is true or that a certain witness, if called, would have given certain testimony.   Each of those stipulations is the equivalent for your purposes of the presentation of evidence or live testimony to the same effect.   You should regard such agreed facts as true, and accept that the witness would have given that testimony.   However, it is for you to determine the effect to be given to those facts or that testimony.

> Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Usama Bin Laden, et al., S7 98 Cr. 1023 (S.D.N.Y. 2001) (LBS).

## Request Number 26

**Defendant's Right Not to Testify [if requested]**

The defendant did not testify in this case.   Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the Government's burden to prove a defendant guilty beyond a reasonable doubt.   A defendant never is required to prove that he is innocent.   You may not attach any significance to the fact that the defendant did not testify, and you may not consider it against him in any way in your deliberations in the jury room.

Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Greenberg, S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK).

**Request Number 27**

**Variance in Dates**

As we have proceeded through the Indictment, you have noticed that it refers to a range of dates.   I instruct you that it does not matter if a specific event alleged to have occurred on or about a certain date or month, but the testimony indicates that in fact it was a different date or month. The law requires only a substantial similarity between the dates and months alleged in the Indictment and the dates and months established by the evidence.

As I have already instructed you, it is sufficient that you find, beyond a reasonable doubt, that a defendant was part of a conspiracy charged in the Indictment at some point in the time frame alleged, except where I already have instructed you that some narrower timeframe applies to a particular count.

Adapted from the jury instructions in United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); United States v. Greenberg, S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK).

**Request Number 28**

**Particular Investigative Techniques Not Required**

You have heard reference, in the arguments of defense counsel in this case, to the fact that certain investigative techniques were not used by law enforcement authorities.   There is no legal requirement that the Government prove its case through any particular means.   While you are to carefully consider the evidence presented by the Government, you need not speculate as to why they used the techniques they did, or why they did not use other techniques.   The Government is not on trial, and law enforcement techniques are not your concern.

Your concern is to determine whether or not, based on the evidence or lack of evidence, the guilt of the defendant has been proved beyond a reasonable doubt.

Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK).

41

**Request Number 29**

**Testimony of Law Enforcement Officers**

You have heard testimony from law enforcement officers. The fact that a witness may be employed by a government in such a capacity does not mean that his testimony is necessarily deserving of any more or any less consideration or any greater or lesser weight than that of anybody else.   At the same time, it is legitimate for the defense to attack the credibility of law enforcement witnesses on the ground that their testimony might be colored by a personal or professional interest in the outcome.

It is your judgment, after reviewing all of the evidence, whether to accept the testimony of the law enforcement witnesses and to give that testimony whatever weight you think it deserves.

Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Salazar-Espinosa, S3 05 Cr. 517 (S.D.N.Y. 2007) (LAK).

**Request Number 30**

**Cooperating Witnesses**

Now, there has been testimony before you by cooperating witnesses.   Cooperating witnesses are frequently used by the Government to obtain leads and to obtain information about people suspected of violating the law.

Experience will tell you that the Government frequently must rely on the testimony of cooperating witnesses who participated in the criminal activity about which they testified in a trial. For those very reasons, the law allows the use of the testimony of cooperating witnesses.   In fact, in federal courts, the law is that the testimony of an accomplice or cooperating witness in itself may be enough for conviction if the jury believes it proves guilt beyond a reasonable doubt.   So the testimony of the cooperating witnesses is properly considered by you.

Like the testimony of any other witness, cooperating witness testimony should be given the weight that it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor, candor, the strength and accuracy of a witness's recollection, his background, and the extent to which his testimony is or is not corroborated by other evidence in the case.

You heard testimony about agreements between the Government and the cooperating witnesses.   I must caution you that it is no concern of yours why the Government made an agreement with a particular witness.   Your sole concern is whether a witness has given truthful testimony here in this courtroom before you.

In evaluating the testimony of a cooperating witness, you should ask yourselves whether the witness would benefit more by lying, or by telling the truth.   Was his testimony made up in any way because he believed or hoped that he would somehow receive favorable treatment by testifying falsely?   Or did he believe that his interests would be best served by testifying

43

truthfully?   If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause him to tell the truth? Did this motivation color his testimony?

If you find that the testimony was false, you should reject it.   If, however, after a careful examination of the accomplice witness's testimony and demeanor, you are satisfied that the witness told the truth, you should accept it as credible and act upon it accordingly.

As with any witness, let me emphasize that the issue of credibility need not be decided in an all-or-nothing fashion.   Even if you find that a witness testified falsely in one part, you still may accept his testimony in other parts, or may disregard all of it.   That is a determination entirely for you, the jury.

> Adapted from the jury instructions in <u>United States</u> v. <u>Abu Ghayth</u>, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); <u>United States</u> v. <u>Jeffrey Otis Redden</u>, 02 Cr. 1141 (S.D.N.Y. 2004) (LAK); <u>United States</u> v. <u>Paa Smith</u>, 02 Cr. 104 (S.D.N.Y. 2002) (JFK).

**Request Number 31**

**Publicity**

Your verdict must be based solely on the evidence presented in this courtroom in accordance with my instructions. You must disregard completely any report that you have read in the press, seen on television or the internet, or heard on the radio.   Indeed, it would be unfair to consider such reports, since they are not evidence and the parties have no opportunity to contradict their accuracy or otherwise explain them away.

In short, it would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity.

Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Ghailani, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); see also Sand, Modern Federal Jury Instructions, Instr. 2-17

45

**Request Number 32**

**Charts and Summaries**

During the course of trial there were charts and summaries shown to you in order to make the other evidence more meaningful and to aid you in considering that evidence.   They are not direct, independent evidence; they are summaries of the evidence.   They are admitted into evidence as aids to you.

In understanding the evidence which you have heard, it is clearly easier and more convenient to utilize summary charts than to place all of the relevant documents in front of you.   It is up to you to decide whether charts and summaries fairly and correctly present the information in the testimony and the documents.   The charts are not to be considered by you as direct proof of anything.   They are merely graphical demonstrations of what the underlying testimony and documents are.

It is for you to decide whether the charts and summaries correctly present information contained in the testimony and in the exhibits on which they are based.   To the extent that the charts conform with what you determine the underlying evidence to be, you may consider them if you find that they are of assistance to you in analyzing and understanding the evidence.

> Adapted from the jury instructions given in United States v. Castellano,
> 84 Cr. 63, aff'd in part and rev'd in part, 811 F.2d 47 (2d Cir. 1987); and
> Sand, Modern Federal Jury Instructions, Instr. 5-13.

46

**<u>Request Number 33</u>**

**Preparation of Witnesses**

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with lawyers and, in some cases, agents before the witnesses appeared in court.

Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers or the agents before testifying so that the witness can be aware of the subjects he will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them.

Such consultation helps conserve your time and the Court's time.   In fact, it would be unusual for a lawyer to call a witness without such consultation.

Again, the weight you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

> Adapted from the jury instructions in <u>United States</u> v. <u>Abu Ghayth</u>, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); <u>United States</u> v. <u>Ghailani</u>, S10 98 Cr. 1023 (S.D.N.Y. 2010) (LAK); <u>United States</u> v. <u>Greenberg</u>, S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK).

**<u>Request Number 34</u>**

**Evidence Obtained Pursuant To Search**

You have heard testimony about evidence that was seized in searches.   Evidence obtained from these searches was properly admitted in this case, and may be properly considered by you. Whether you approve or disapprove of how it was obtained should not enter into your deliberations because I now instruct you that the Government's use of this evidence is entirely lawful.

You must, therefore, regardless of your personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proved the defendant's guilt beyond a reasonable doubt.

<div style="margin-left:2em;">

Adapted from the jury instructions in <u>United States</u> v. <u>Abu Ghayth</u>, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); <u>United States</u> v. <u>Ogando</u>, 90 Cr. 469 (PNL) (S.D.N.Y. 1991), <u>aff'd</u>, 968 F.2d 146 (2d Cir. 1992).

</div>

**Request Number 35**

**Uncalled Witnesses Equally Available**

There are several persons whose names you have heard during the course of the trial but who did not appear here to testify.   I instruct you that each party had an equal opportunity or lack of opportunity to call any of these witnesses.   Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called.   Their absence should not affect your judgment in any way.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Adapted from the jury instructions in <u>United States</u> v. <u>Abu Ghayth</u>, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); <u>United States</u> v. <u>Greenberg</u>, S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK); <u>see</u> <u>also</u> Sand, <u>Modern Federal Jury Instructions</u>, Instr. 6-7.

49

**Request Number 36**

**Use of Recordings And Transcripts**

The Government has offered evidence in the form of recordings of conversations involving the defendant and co-conspirators.   In some cases, these recordings were made without the knowledge of the defendant or co-conspirators who participated.   I instruct you that the use of these procedures to gather evidence is perfectly lawful, and the Government is entitled to use the recordings in this case.

Whether you approve or disapprove of the recording of these conversations may not enter your deliberations.   You must, therefore, regardless of any personal opinions, give this evidence full consideration along with all the other evidence in the case in determining whether the Government has proved beyond a reasonable doubt the guilt of the defendant you are considering.

The Government has been permitted to hand out typed documents which it prepared containing the Government's interpretation of what appears on the recordings which have been received as evidence.   Those were given to you as an aid or guide to assist you in listening to the recordings.   However, as to those transcripts of discussions that were in English, the transcripts are not in and of themselves evidence.   You alone should make your own interpretation of what appears on the recordings based on what you heard.   If you think you heard something differently than what appeared on the transcript, then what you heard is controlling.

Some portions of the recordings were in foreign languages, Swahili and Arabic.   For that reason, it was necessary for the Government to obtain translations of those conversations into English.   The transcripts of those portions of the conversations embody the testimony of interpreters whose testimony was set forth in a stipulation.   As such, those portions of the transcripts reflecting the foreign language-to-English translation have been admitted into

50

evidence.   Similarly, translations of certain documents that were in foreign languages have been admitted into evidence, and these translations also embody the testimony of interpreters whose testimony was set forth in a stipulation.

> Adapted from Sand, <u>Modern Federal Jury Instructions</u>, Instrs. 5-9, 5-10, 5-11; and the jury instructions given in <u>United States</u> v. <u>Mucciante</u>, 91 Cr. 403 (PNL) (S.D.N.Y. 1992).   <u>See</u> <u>United States</u> v. <u>Ulerio</u>, 859 F.2d 1144, 1145 (2d Cir. 1988) (not abuse of discretion to admit foreign language transcripts in evidence).

**Request Number 37**

**Multiple Counts**

As I noted at the beginning, the defendant is charged in four Counts of the Indictment. Each Count charges the defendant with a different crime.   You must consider each count of the Indictment separately, and you must return a separate verdict on each Count.   The case on each Count stands or falls upon the proof or lack of proof.   Your verdict on any Count should not control your decision on any other Count.


Adapted from Sand, Modern Federal Jury Instructions, Instr. 3-8.

**Request Number 38**

**Punishment Not to be Considered by Jury**

The question of possible punishment of the defendant is of no concern to the jury and it should not, in any sense, enter into or influence your deliberations.   The duty of imposing sentence rests exclusively upon the Court.   I will note, however, that the defendant here does not face the death penalty for legal reasons, which are not your concern.   Under your oath as jurors, you cannot allow a consideration of the punishment which may be imposed upon a defendant, if convicted, to influence your verdict in any way.   You should determine guilt or non-guilt based on the evidence alone.

Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Greenberg, S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK).

**Request Number 39**

**Sympathy; Oath as Jurors**

You are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law.   If you let prejudice or sympathy interfere with your clear thinking, there is a risk that you will not arrive at a just verdict.   All parties to any case are entitled to a fair trial.   You must make a fair and impartial decision so that you will arrive at a just verdict.

I know that you will do this.


Adapted from the jury instructions in United States v. Abu Ghayth, S14 98 Cr. 1023 (S.D.N.Y. 2014) (LAK); United States v. Greenberg, S1 05 Cr. 888 (S.D.N.Y. 2008) (LAK).

Dated:   New York, New York
         January 20, 2015

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney
                              Southern District of New York


                      By: _____/s/ Nicholas J. Lewin_____
                              Sean S. Buckley
                              Adam Fee
                              Nicholas J. Lewin
                              Stephen J. Ritchin
                              Assistant United States Attorneys
                              (212) 637-2261 / 1589 / 2337 / 2503