UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA,


                -against-                          S7 98-cr-1023 (LAK)


KHALID AL FAWWAZ,

                      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:


           Sean S. Buckley
           Adam Fee
           Nicholas J. Lewin
           Stephen J. Ritchin
           Assistant United States Attorneys
           Preet Bharara
           UNITED STATES ATTORNEY

           Bobbi C. Sternheim
           John Robinson
           LAW OFFICES OF BOBBI C. STERNHEIM

           David V. Kirby
           Barbara E. O'Connor
           O'CONNOR & KIRBY, PC

           *Attorneys for Defendant Khalid al Fawwaz*


LEWIS A. KAPLAN, *District Judge*.

        On August 7, 1998, the United States embassies in Nairobi, Kenya, and Dar

es Salaam, Tanzania were bombed, killing 224 individuals and injuring thousands more. Defendant

2

Khalid al Fawwaz was indicted for, among other things, conspiring with Usama bin Laden and others to kill Americans abroad by bombing the United States embassies in Nairobi and Dar es Salaam and by other means.  A five-week trial commenced on January 20, 2015.

After the jury was charged, told that it would receive a copy of the indictment, and retired to deliberate, al Fawwaz for the first time raised concerns regarding the scope of the indictment to be provided to the jury.  Al Fawwaz argued principally that the government should redact from the 148-page indictment any allegations that had not been subject to proof at trial. When the government acquiesced and redacted the portions of the indictment that it had not attempted to prove at trial, al Fawwaz then claimed that the submission of a shorter, redacted version of that indictment would unduly prejudice him.  Ultimately, the Court elected not to provide the jury with either the original indictment or a redacted version of it.  It instead read aloud to the jury certain overt acts from the indictment that al Fawwaz agreed had been subject to proof at trial.  Al Fawwaz immediately moved for a mistrial, which the Court denied from the bench.  This opinion sets out the context and bases for that ruling.

*Facts*

*The Indictment*

The indictment on which al Fawwaz was tried was 148 pages long and contained 308 counts.  Al Fawwaz, however, was charged only in four counts: conspiracy to kill United States nationals (Count One), conspiracy to kill officers and employees of the United States and internationally protected persons (Count Three), conspiracy to destroy buildings and property of the United States (Count Five), and conspiracy to attack national U.S. defense premises and utilities (Count Six).  Counts One, Three, and Six – but not Count Five – required the government to prove

3

that at least one overt act was performed in furtherance of the relevant conspiracy.  Paragraph 12 of the indictment, which was incorporated into all four counts charging al Fawwaz, alleged nearly two hundred overt acts.

*The Charge Conference and Jury Charge*

The Court distributed a draft jury charge to the parties on February 17, 2015.  It included the following instruction: "The government may satisfy the overt act element with respect to Counts One, Three and Six by proving one of the overt acts alleged in paragraph 12 of the Indictment."[1]  It cautioned, however, that "[t]he Indictment is not evidence" and repeatedly emphasized the burden of proof and the presumption of innocence.[2]  Neither party objected to these instructions at the charge conference the following day.[3]  Nor did al Fawwaz voice any concern with the jury receiving the indictment to review, among other things, the overt acts alleged in paragraph 12.

On February 23, 2015, immediately prior to charging the jury, the Court asked the government if it had prepared a redacted indictment.  The government reported that it was in the process of preparing one and would confer with defense counsel.[4]

---

[1]       Court Ex. E at 10:18-20.

[2]       *Id*. at 2:2-25, 29:2.

[3]       Trial Tr. ("Tr.") at 1849:5-11, 1859:22-24, 1871:20-1872:16.

[4]       *Id*. at 2098:5-11.

4

The Court proceeded with the charge.  The jury was told that it would "have a copy of the indictment in the jury room, at least the parts of it that concern you," and that "on those counts that require an overt act, the government may, but it need not, prove one of the overt acts that are alleged in paragraph 12 of the indictment, which you haven't seen yet, but you will."[5]  The Court further instructed the jury that "allegations of the indictment . . . are subject to proof or lack thereof just like anything else" and that al Fawwaz "is presumed innocent throughout your deliberations until such time, if ever, that you as a jury are satisfied that the government has proven the defendant guilty beyond a reasonable doubt."[6]  Again, neither party objected to these instructions nor requested additional clarification.  The jury then began deliberations.

*Developments During Deliberations*

After the jury retired, the Court again asked whether the parties had settled on a redacted version of the indictment to provide to the jury.  The government informed the Court that it was "going to work with the defense to get that as soon as possible."[7]  Defense counsel did not object, but merely requested that the Court "charge the jury again that the indictment is not evidence" if the indictment were to be sent to the jury room.[8]

---

[5]     *Id*. at 2101:19-21, 2115:21-24; *see also Id*. at 2115:24-2116:10.

[6]     *Id*. at 2103:15-21, 2141:15-17.

[7]     *Id*. at 2169:2-5.

[8]     *Id*. at 2169:21-23.

5

Nonetheless, later that afternoon – after the jury already had deliberated for several hours – defense counsel for the first time raised concerns about the indictment that was to be provided to the jury.  Defense counsel noted that there were several allegations in the indictment that the government elected not to prove at trial and argued that it would be prejudicial to al Fawwaz to allow the jury to read any such portions of the indictment.[9]  Ultimately, the government agreed to "remov[e] anything [from the indictment] for which proof was not offered in the course of this trial. We have now gotten rid of much, if not all, of the background section, as well as many of the overt acts that were not addressed in the course of this trial."[10]  But that was not the end of the matter.

The following morning, the parties reported that they had reached agreement in nearly all respects as to those items to be redacted from the indictment.  They disagreed, however, about whether the indictment should be retyped, renumbered, and reformatted to avoid speculation from the jury regarding the nature of the information that had been redacted.[11]  Although defense counsel had requested – and the government had agreed to – the removal of allegations for which no proof had been presented at trial, they then objected to "a streamlined 19-page indictment instead

---

[9]     *Id*. at 2171:21-24, 2174:23-25.

[10]    *Id*. at 2180:12-16.

[11]    *Id*. at 2192:23-2195:23.

of a 14[8]-page" indictment.[12]  Defense counsel argued that renumbering the indictment would violate the rule of specialty[13] and the indictment clause of the Constitution.[14]

The government took a different view.  It contended that Second Circuit precedent stressed the importance of a retyped, clean version of the indictment to avoid speculation as to what information had been redacted.[15]  It argued that a redacted indictment – particularly because the redactions at issue were very extensive – would arouse the jury's curiosity, stimulate unwarranted speculation, and invite confusion in deliberations, all of which could raise the potential to prejudice al Fawwaz and invite an ineffective assistance of counsel claim in the event that al Fawwaz were convicted.[16]

In the last analysis, the dispute related purely to the form – paragraph numbers and the appearance of redactions – rather than the substance of the information to be provided to the jury.  Accordingly, the Court elected not to provide either the full indictment or a redacted version of it to the jury in writing.  It instead instructed the jury as follows:[17]

During the course of my instructions I told you that one of the elements the government must prove to convict on any of Counts One, Three, and Six is that at

---

[12]

    *Id*. at 2202:9-2203:20.

[13]

    Al Fawwaz was extradited from the United Kingdom and presented in this Court on October 6, 2012 for trial.

[14]

    Tr. at 2195:11-19.

[15]

    *Id*. at 2204:18-2205:3.

[16]

    *Id*. at 2216:22-2217:7, 2218:10-23.

[17]

    *Id*. at 2230:8-2231:13.

least one overt act was performed in furtherance of the conspiracy that's charged in the count you're considering.  I further explained that the government may satisfy that overt act requirement either by proving one of the overt acts alleged in paragraph 12 of the indictment or by proving some other overt act regardless of whether the overt act is alleged in the indictment . . . . For reasons that do not concern you and about which you shouldn't speculate, I'm not, as I indicated, sending the indictment in to the jury room.  But since I mentioned overt acts that are alleged in paragraph 12, I am going to read you some of the overt acts as they are alleged in paragraph 12 of the indictment. . . .

[B]efore I start reading, I want to emphasize to you that the indictment is not evidence, it's simply the document that contains the government's allegations against the defendant.  The defendant, I remind you, is presumed innocent unless and until you all agree that the government has proved him guilty of one or more counts beyond a reasonable doubt.  The burden never shifts to the defendant.

The Court then read only those overt acts from the indictment that al Fawwaz had insisted should be submitted to the jury in writing.[18]  At the conclusion, the Court reminded the jury that "what I have read to you are allegations.  They are accusations.  They are not evidence.  I simply read them to you so that you will have in mind some of the overt acts that are alleged in paragraph 12, the relevance of which I've explained to you both this afternoon and in my instructions earlier in the week."[19]

Nonetheless, al Fawwaz moved for a mistrial on the ground that reading those overt acts overemphasized the factual allegations of the indictment and effectively functioned as a

---

[18]

*Id*. at 2241:1-3.

[19]

*Id*. at 2240:6-12.

summation for the government.[20]  The Court denied the motion from the bench.[21]  Ultimately, on February 26, 2015, al Fawwaz was convicted on all four counts with which he was charged.

As mentioned, this opinion explains the Court's reasoning in denying the motion for a mistrial.

*Discussion*

I.    *Legal Standard*

Trial courts may "permit[] the jury to take a copy of the indictment into the jury room, after taking care to instruct the jury that the indictment [is] not to be considered evidence."[22] Moreover, the Second Circuit long ago explained that "[i]t is not improper for the court to read the indictment in its entirety or portions thereof to the jury. . . . Indeed, in protracted cases involving numerous counts such as this one, reference to the indictment often serves as a helpful guide in delineating the issues the jury may be called on to decide."[23]  The ultimate decision "rests in the

---

20

   *Id*. at 2240:18-23.

21

   *Id*. at 2241:1-4.

22

   *United States v. Esso*, 684 F.3d 347, 350 (2d Cir. 2012) (alteration in original) (quoting *United States v. Giampino*, 680 F.2d 898, 901 n.3 (2d Cir. 1982)).

23

   *United States v. Press*, 336 F.2d 1003, 1016 (2d Cir. 1964) (citation omitted); *but see United States v. Kelly*, 349 F.2d 720, 765 (2d Cir. 1965) (recognizing that the indictment was too long, too detailed, and too involved for reading it to be helpful to the jury, but finding no prejudicial error because the Court instructed the jury that the indictment was simply an accusation).

sound discretion of the court."[24]   Nonetheless, where the Court elects to read or provide to the jury

the indictment, or a portion thereof, a proper cautionary instruction that the indictment is not to be

considered evidence is of paramount importance.[25]


II.     *The Court Properly Exercised Its Discretion by Reading to The Jury the Relevant Overt Acts
        in the Indictment*

        Al Fawwaz's claim that reading to the jury certain overt acts from the indictment

deprived him of the right to a fair trial is entirely without merit.

        As an initial matter, al Fawwaz's position on this issue, in this Court's view, was

nothing more than gamesmanship.  Defense counsel raised absolutely no concern at the charge

conference when the Court proposed that the jury refer to paragraph 12 of the indictment for a list

of the overt acts that were alleged to have taken place in furtherance of the charged conspiracies.

Counsel again remained silent when the jury was charged and the Court instructed it that "on those

counts that require an overt act, the government may, but it need not, prove one of the overt acts that

are alleged in paragraph 12 of the indictment, which you haven't seen yet, but you will."[26]   Indeed,

---

[24]

    *Press*, 336 F.2d at 1016; *see also United States v. Cirami*, 510 F.2d 69, 74 (2d Cir. 1975)
    (expressing no view as to whether juries should inspect the indictment in any or all criminal
    prosecutions).

[25]

    *Esso*, 684 F.3d at 350-51 (holding that it is not error to permit the jury to take the indictment
    home overnight "so long as jury deliberations have begun and appropriate cautionary
    instructions are provided"); *United States v. Deters*, 184 F.3d 1253, 1257 (10th Cir. 1999)
    (holding that the court did not err in reading to the jury a 30-page indictment because it
    explicitly instructed the jury that the indictment is not evidence); *United States v. England*,
    966 F.2d 403, 408 (8th Cir. 1992) (reading the indictment to the jurors and sending a copy
    of it into the jury room did not prejudice the defendant where the court admonished the jury
    at least twice that allegations contained in the indictment were not evidence).

[26]

    Tr. at 2115:21-24.

it was not until after the jury retired to deliberate that defense counsel claimed a need to streamline the indictment for submission to the jury, and then only in a way that invited the jury to speculate about what information had been redacted.  Indeed, defense counsel's objection to a retyped and renumbered indictment is contrary to Second Circuit precedent.  Where portions of the indictment are "surplusage or other matter that a jury may properly be instructed to disregard . . . the preferable course is to prepare a retyped 'clean' version of the indictment, omitting the language to be disregarded without any indication of its omission."[27]  The Second Circuit reasoned that "[c]rossing out or covering the deleted words only serves to arouse the jury's curiosity and stimulate unwarranted speculation as to the full scope of the original allegations."[28]  Perhaps this is exactly what defense counsel sought – to stimulate unwarranted speculation and confuse the issues.

The government was required to prove, as to Counts One, Three, and Six, that at least one overt act was performed in furtherance of the relevant conspiracies.  It therefore was entitled to have the jury provided with examples of overt acts that the indictment alleged were performed in furtherance of those conspiracies.  Accordingly, the Court properly exercised its discretion by reading to the jury the portion of the indictment that alleged overt acts.  Moreover, there can be no dispute regarding the substance of what was read to the jury because even defense counsel acknowledged that the Court read to the jury word-for-word what earlier that day defense counsel had insisted should be submitted to the jury room.[29]

---

[27]     *Cirami*, 510 F.2d at 74.

[28]     *Id*.

[29]     Tr. at 2241:1-9.

The Court understands that al Fawwaz undoubtedly would have preferred that the Court read the overt acts at the same time as the other jury instructions, rather than during deliberations. Unfortunately, defense counsel did not raise any concerns with providing the indictment to the jury in lieu of reading all or part of paragraph 12 during the charge until after deliberations had begun.

Moreover, clear and thorough cautionary instructions cured any potential prejudice that otherwise might have resulted. Prior to reading the overt acts, the Court emphasized that "the indictment is not evidence, it's simply the document that contains the government's allegations against the defendant."[30] Then, at the conclusion only moments later, the Court again stressed that "what I have read to you are allegations. They are accusations. They are not evidence."[31] Additionally, the jury was reminded that al Fawwaz "is presumed innocent unless and until you all agree that the government has proved him guilty of one or more counts beyond a reasonable doubt. The burden never shifts to the defendant."[32] The instructions with respect to the indictment were clear, uncomplicated, and in large respects a reminder of those instructions that the jury already had received. Indeed, "we presume that jurors remain true to their oath and conscientiously observe the

---

[30] *Id*. at 2231:7-10.

[31] *Id*. at 2240:6-12.

[32] *Id*. at 2231:10-13.

12

instructions and admonitions of the court."[33]  Accordingly, the reading of the relevant overt acts of the indictment in no way deprived al Fawwaz of a fair trial.[34]  There was no basis for a mistrial.

### Conclusion

For the foregoing reasons, as well as those stated on the record on February 24, 2015, al Fawwaz's motion for a mistrial was denied.

SO ORDERED.

Dated:        May 6, 2015

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[33]

United States v. Rosario, 111 F.3d 293, 300 (2d Cir. 1997); see also United States v. Snype, 441 F.3d 119, 129 (2d Cir. 2006) ("[T]he law recognizes a strong presumption that juries follow limiting instructions.").

[34]

It is worth noting – though the Court's decision at the time obviously did not and could not have rested on this ground – that al Fawwaz was convicted on Count Five, which did not require the government to prove that an overt act was committed in furtherance of the conspiracy.  This may prove relevant to any appeal depending upon the sentence imposed.