# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-306-6666 • Cell
888-587-4737 • Fax

33 West 19th Street - 4th Floor
New York, New York 10011
bc@sternheimlaw.com

May 13, 2015

*By ECF and Hand Delivery*

Honorable Lewis A. Kaplan
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re: United States v. Khalid Al Fawwaz
S7 98 Cr. 1023 (LAK)

Dear Judge Kaplan:

We write to address briefly certain arguments made in the government's sentencing submission, some of which are based on evidence that was presented to the Court for the first time in the government's submission, and others that simply misconstrue the trial record. We also address the Court's inquiries into whether Mr. Al Fawwaz's time served in British custody will be credited against the sentence to be imposed and whether he will be eligible to receive "good time" credit with respect to such time. Finally, we enclose a copy of our objections to the Presentence Investigation Report.[1]

**The Interview of Mr. Al Fawwaz**

The government cites a handful of statements that Mr. Al Fawwaz made during an interview with Channel 4 in London in support of its view that Mr. Al Fawwaz "agreed with [bin Laden's] call to violence" Gov. Mem. at 10. Surprisingly, despite its view that the interview contained these strong assertions, the government did not introduce the interview at trial for consideration by the jury. We disagree with the government's claims about the interview and encourage the Court to watch the interview in its entirety. When placed in context, the portions of the interview the government cites do not show that Mr. Al Fawwaz agreed with bin Laden's call to violence; in fact, they show just the opposite.

Throughout the interview, Mr. Al Fawwaz forcefully and repeatedly states that bin Laden's call to violence was bin Laden's own personal call and did not represent the views of the ARC. Early on in his conversation with Mr. Al Fawwaz, the interviewer notes that several organizations have declared jihad along with bin Laden and asks, "Has your organization [the ARC] taken this step?" Mr. Al Fawwaz responds, "No. We didn't. Osama did that personally. . . . He understands our policy." Later on, the interviewer states, "I think one maybe

---

[1] The Presentence Report references defense objections, none of which impact the Guideline calculations. *See* PSR, p. 28. We append the previously submitted objections -Def. Ex. 3-merely to complete the record. We are not seeking a *Fatico* hearing.

should make clear that although Osama bin Laden has declared jihad, your organization does not support that call for jihad" (Def. Ex. 1 at 18:22-18:33).[2] Mr. Al Fawwaz then reaffirms that "his [bin Laden's] declaration of jihad is a personal declaration. He didn't declare it in our [the ARC's] name..." (Def. Ex. 1 at 18:33-18:40).

Nonetheless, the government highlights the fact that in one of his responses, Mr. Al Fawwaz characterizes bin Laden's call for jihad as "just." Like many, if not most Muslims who are Saudi citizens, Mr. Al Fawwaz saw the American military presence in Saudi Arabia as illegal under Sharia Law and as an affront to the sovereignty of Saudi Arabia and thus viewed the United States as a "just" target for condemnation. But this does not mean that he supported the next step in bin Laden's thinking—that violence against the United States was an appropriate response to the military presence. Indeed, throughout the interview, he makes his position clear that it is not the time for solutions—whatever they might be—but simply a time for education and elucidation of the issues. For example, at one point he stresses that "we are still in the stage of expressing the problem, trying to clarify it for people, and trying to get people to understand what is happening—*we didn't reach the stage where we will put solutions into the process*" (Def. Ex. 1 at 18:55-19:13).[3]

Thus, contrary to the government's assertion that "Fawwaz ... made it clear in th[e] interview that the Advice and Reformation Committee's decision not to join the call for jihad was an issue of timing," the interview in fact shows that Mr. Al Fawwaz and the ARC had not yet come to any conclusions on the appropriate "solution" to the corrupt Saudi regime and the American military presence in Saudi Arabia. Rather, Mr. Al Fawwaz and the ARC were focused on "educat[ing] the people" (Def. Ex. 1 at 11:23-27), which he saw as a precursor to "introduc[ing] ways of reform" (Def. Ex. 1 at 11:42-46). He notes that the ARC is comprised of

---

[2] Gov. Ex. A (Discovery number PLW37-14), accompanying the government's Sentencing Memorandum, is a separate recording of the same interview recorded on our Def. Ex. 1 (Discovery number PLW37-20). These two recordings were found at Mr. Al Fawwaz's home in the 1998 search. We submit Def. Ex. 1 because the sound quality of this recording is superior to that of Gov. Ex. A. There are statements on Def. Ex. 1 which can be heard, whereas the same statements on Gov. Ex. A cannot be discerned.

The minute and second numbers in our citations correspond to the numbers that appear in the video.

[3] It is also clear from the interview that Mr. Al Fawwaz did not necessarily equate the term "jihad" with violence against Americans. In Islam, "jihad" can refer either to the personal struggle to become a better person—what the Prophet Mohammed labeled "the greater jihad"— or to an outward struggle against enemies of Islam under appropriate conditions—what the Prophet labeled "the lesser jihad." When the interviewer asks Mr. Al Fawwaz what the term "jihad" actually means, Mr. Al Fawwaz does not mention violence at all (Def. Ex. 1 at 17:08-18:22). Elsewhere in the interview, he explains that no Muslim "can say that he does not accept jihad or that he does not believe in it. Otherwise, he would no longer be a Muslim" (Def. Ex. 1 at 10:23-10:38). This suggests that what Mr. Al Fawwaz refers to in this comment is simply the "struggle" to become a better person—the "greater jihad," a fundamental tenet of the Muslim religion.

"scholars," "businessmen," and "university professors" (Def. Ex. 1 at 26:08-15) and describes the organization's purpose as "support[ing] the reforming business and support[ing] reformers" (Def. Ex. 1 at 25:25-31). In the full context of the interview, it is clear that what Mr. Al Fawwaz means when he says that the ARC's refusal to join the call for "jihad" was a matter of "timing" is not that violent "jihad" is inevitable or that he sees it as the next step, but that he and his group have not yet determined what the next step after education of the people will be. His constant emphasis on "reform" belies the suggestion that he sees violence as the solution. Reform implies the antithesis of violence; it implies the gradual evolution and improvement of a matter.

The government also states that Mr. Al Fawwaz "reject[ed] a description of Bin Laden as a terrorist and claim[ed] instead that the Americans (and the Jews) were the terrorists . . . ." Mr. Al Fawwaz's actual response is more nuanced:

> [I]t is not a new thing for the Americans to describe any Muslim activist with a terrorist. It seems to me it is the most obvious charge that they can use against any Muslim, any activist Muslim. I cannot accept the word terrorism here. We have to discuss first, "Well, what do they exactly mean by terrorist?" What is terrorism to me, to every person who is educated enough and who is wise enough? You have to classify the Americans as terrorists. The Jews as terrorists. Look at what they are doing with the civilians back in Philistine. Look at what the Americans have done in the Second World War, for example, with Japan, killing thousands and thousands of people using atomic bombs. And this continues. The way they treated the Bosnian people. The way they are keeping their mouths shut about what is happening in Philistine and what they are doing in Iraq as well. I think the word terrorism needs to be restudied and redescribed. We cannot accept this charge anyway. ***But I think as far as Osama is concerned, I think he is the one who should answer this question.***

(Def. Ex. 1 at 14:50-16:17).

The interview simply doesn't support the government's characterization of Mr. Al Fawwaz as violent. It rather confirms that Mr. Al Fawwaz viewed his role in the reform movement as someone who worked with others to "express the problem" and "educate the people" about the corrupt Saudi regime and the American presence in the Middle East. Further, Mr. Al Fawwaz viewed peaceful reconciliation with the West as a possible outcome of the reform struggle. When asked about future relations with the West, Mr. Al Fawwaz states:

> Well, that is up to the people who are going to take . . . the leadership in the future, but I think the Islamic nation of the future . . . will have to have some kind of relationship with the West. I mean, there is nothing against having a relationship but provided that it will be under both respect. You know, if you have a relationship which is based on a kind of a partnership, then people are willing to continue to have some kind of relationship.

(Def. Ex. 1 at 31:37-32:10).

3

This is not a statement of someone who supports bin Laden's wish to annihilate the West. It is not the statement of an Islamic fanatic who wants to destroy all "infidels." It is the statement of a thoughtful reformer who sees peace as a very real outcome of his struggle to rid Saudi Arabia of its corrupt government and the Arabian Peninsula of the American military presence.

### The Claim That Mr. Al Fawwaz "Prepared and Disseminated" the 1996 Declaration

The government repeats the claim that Mr. Al Fawwaz helped "prepare and disseminate" the 1996 declaration seven times in its sentencing submission. Gov. Mem. at 1 ("While in London, Fawwaz helped Bin Laden prepare and disseminate his sanguinary calls to Muslims to kill Americans . . . ."); *id.* ([W]hen [al Qaeda's] calls to kill Americans that Fawwaz had helped prepare and disseminate yielded their bitter fruit . . . ."); *id.* at 6, 10, 20, 22, 27.

But repeating this claim doesn't make it true. As we pointed out in our original submission, there is simply no evidence that Mr. Al Fawwaz helped "prepare" the 1996 declaration, and the only evidence that he helped "disseminate" it was the fact that Abdel Bari Atwan testified at his deposition that he received one copy of the declaration from Mr. Al Fawwaz.[4]

To support its claim that Mr. Al Fawwaz helped "prepare" the 1996 declaration, the government relies entirely on two facts. First, the government notes that a folder on Mr. Al Fawwaz's computer containing files of the declaration had a "create date" of July 30, 1996. Gov. Mem. at 6-7. But although the folder predated the August 1996 declaration, the actual *files* of the declaration themselves had create dates *after* the declaration. See GX 2500-I-T. The government witness who prepared the file directory of Mr. Al Fawwaz's computer explained on cross-examination how this could be: a user can change a folder's name without changing the "create date" of that folder. Tr. 1532. The most logical inference, then, is not that Mr. Al Fawwaz possessed copies of the declaration before it was issued (because then the files themselves would have had create dates predating the declaration), but that Mr. Al Fawwaz originally created the folder for a purpose entirely unrelated to the declaration and then renamed the folder after he received the declaration. This would explain why the folder has a "modified date" of September 15, 1996—*after* the 1996 declaration was issued.

Second, the government notes that the copies of the declaration in Mr. Al Fawwaz's home "varied in formatting, language, and style." Gov. Mem. at 7. But the government cites no evidence to support this claim. At trial, the only "variation" identified by the government was the fact that certain text on one copy of the declaration was in boldface and underlined, while that same text on another copy of the declaration was not. Tr. 1675-76. It is simply unreasonable to infer from such minor differences that Mr. Al Fawwaz personally edited or otherwise helped "prepare" the declaration.

---

[4] Even this evidence is heavily disputed. As the Court may recall, although Atwan testified in his 2014 deposition that he received a copy of the 1996 declaration from Mr. Al Fawwaz, in 1999—15 years nearer the events in question - he stated under oath that he did not remember from whom he received the declaration.

4

### The Government's Comparison of Mr. Al Fawwaz to Wadih El Hage

The government's argument that Mr. Al Fawwaz "deserves the same sentence as Wadih el Hage" overlooks several important differences between the two men. Unlike Mr. Al Fawwaz, El Hage was directly responsible for Al Qaeda military operations. He traveled twice to Afghanistan in 1997 to meet with Bin Laden, 2001 Trial Tr. 5225:1-7, and when he returned, he conveyed Bin Laden's new military policy to Al Qaeda members in Kenya, Tanzania, and Somalia. *See* GX 310-74A-T (describing how El Hage conveyed to Abu Jihad Al Nubi the "new policy" to "revive activism in Somalia"); *see also* 2015 Trial Tr. 484:14, 484:21, 485:8.

El Hage was in charge of Harun Fazul and Abu Jihad Al Nubi, both of whom were directly connected to the bombings in Nairobi and Tanzania respectively.[5] After working as a trainer in Somalia, Harun moved in with El Hage in Nairobi. 2015 Trial Tr. 480:20. Harun referred to El Hage as "the director." GX 211C-T at 4. Harun also took actions to protect El Hage and his ties to Al Qaeda, including hiding El Hage's files after an Al Qaeda member turned himself over to the Saudi government. *See* GX 300-A-T at 3. Al Nubi met with El Hage after his return from Afghanistan, when El Hage conveyed to him Al Qaeda's new military policy. GX 310-74A-T.

There thus existed a direct connection between El Hage and the bombers themselves—a connection that is utterly lacking with regard to Mr. Al Fawwaz. Moreover, as noted in our original submission, El Hage's lies to the grand jury further distinguish him from Mr. Al Fawwaz.

### The Harun Fax

The government makes much of the fact that in August 1997, Harun Fazul sent a fax to Mr. Al Fawwaz requesting information about an Al Qaeda member possibly cooperating with a foreign government. Gov. Mem. at 7, 35-36. But the government neglects to mention the most salient fact about the fax: Mr. Al Fawwaz never responded to it. Moreover, it is just as plausible that Harun reached out to Mr. Al Fawwaz not because he was a "high-ranking member of al Qaeda," but simply because the individual in question was himself a Saudi national like Mr. Al Fawwaz. Regardless of Harun's reasons for contacting Mr. Al Fawwaz, the fact that Mr. Al Fawwaz did not respond to the fax undermines the government's argument that Mr. Al Fawwaz was a high-ranking member of al Qaeda. If he was such a high-ranking member of Al Qaeda, he certainly would have responded to the fax.

---

[5] Harun lived at 43 Runda Estates from April 1998 until he abruptly moved out the day of the Embassy bombings. 2015 Trial Tr. 1221:12, 1225:14. When the FBI searched 43 Runda Estates, examiners found residue of TNT and PETN, the explosives used in the Nairobi bombing, in a number of parts of and objects found in the house. 2015 Trial Tr. 1228:1. The FBI likewise found TNT and PETN in a house that Al Nubi helped rent. 2001 GX 1055, 2001 GX 1462; 2001 Trial Tr. 2824:13.

5

### Whether Mr. Al Fawwaz Will Receive Credit For Time Served in the United Kingdom

The Federal Bureau of Prisons has indicated that so long as it can confirm that Mr. Al Fawwaz was incarcerated in the United Kingdom and that the time he spent there was because of the extradition request of the United States and not in service of a sentence for another crime, the Bureau of Prisons will credit this time toward his overall sentence. The time he served in the United Kingdom will be treated exactly as if it were served in the United States. Thus, he will also receive "good time" credit with respect to the approximately fourteen years that he served in the United Kingdom.[6]

This information was provided by Jasmine Benson, a legal examiner at the Federal Bureau of Prison's Designation and Sentence Computation Center (DSCC). Ms. Benson can be reached at (972) 623-5915.

### Conclusion

As we explained more fully in our sentencing submission, there are substantial differences between Mr. Al Fawwaz and the defendants who have received life sentences in this case. A significant but definite prison sentence can adequately reflect the seriousness of Mr. Al Fawwaz's conduct, promote respect for the law, and provide just punishment. Accordingly, we respectfully request that the Court sentence Mr. Al Fawwaz to a sentence of less than life imprisonment.

Respectfully submitted,

*Bobbi C. Sternheim*
BOBBI C. STERNHEIM
DAVID V. KIRBY
BARBARA E. O'CONNOR
JOHN ROBINSON

cc: Government Counsel
(*via ECF*)

---

[6] We have appended a chart, Def. Ex. 2, which details the presumptive age of Mr. Al Fawwaz when released from federal prison if sentenced to various terms of years (assuming he gets good-time credit for the time he serves).

DEF. EX. 1

[CD-Rom (Discovery Number PLW37-20)]

To Accompany Courtesy Copy of Annexed Sentencing Submission

**DEF. EX. 2**

| Sentence (years) | Release Age (years)* |
|---:|---:|
| 25 | 57.25 |
| 30 | 61.5 |
| 35 | 65.75 |
| 40 | 70 |
| 45 | 74.25 |
| 50 | 78.5 |
| 55 | 82.75 |
| 60 | 87 |

* Assuming good-time credit

**DEF. EX. 3**

# LAW OFFICES OF BOBBI C. STERNHEIM

212-243-1100 • Main
917-306-6666 • Cell
888-587-4737 • Fax

33 West 19th Street - 4th Floor
New York, New York 10011
bc@sternheimlaw.com

April 27, 2015

**VIA EMAIL**
Sandra Campbell
United States Probation Officer
United States Probation Department
300 Quarropas Street (Ground Floor)
White Plains, NY 10601-1901
Sandra_Campbell@nysp.uscourts.gov

Re: <u>United States v. Khalid Al Fawwaz</u>
S7 98 Cr. 1023 (LAK)

Dear Ms. Campbell:

The following defense objections are made to the Presentence Report with requested corrections/modifications:

¶6) correct spelling: Khalid Al Fawwaz

p. 8) "The Offense Conduct" – Proposed modification:
"'The Offense Conduct' is based on information and assertions provided by the government. Mr. Al Fawwaz intends to appeal his conviction and objects to inclusion of any statement inconsistent with the trial record."

¶20) Objection to:
*"charges are pending"*
Mr. Al-Liby has passed away.

¶24) Objection to:
*"Those who were suspected of collaborating against al Qaeda were to be identified and killed."*
The defense objects to this assertion; the trial record does not support it.

¶25) This paragraph lists the four reasons why Al Qaeda ("AQ") opposed the US. Mr. Al-Fawwaz states that the first, second, and fourth reasons are not the reasons that AQ opposed the US. Mr. Al-Fawwaz states that the third reason (US involvement in Somalia and presence in Saudi) is really the only reason AQ opposes the US.

p. 8, fn. 1) Should be "George H.W. Bush"

¶32) Objection is made to the following language:
*"to provide a cover for activity in support of al Qaeda's 'military' activities, including the recruitment of military trainees, the disbursement of funds"*
*"In addition, the London office served as a conduit for messages, including reports on military and security matters from various al Qaeda cells, including the Kenyan cell, to al Qaeda's headquarter."*

¶37) Objection to "*shared.*"

¶49) Objection to the statement:
"*CS-1 understood that AL FAWWAZ made bayat (the pledge of allegiance) to al Qaeda and BIN LADEN, and AL FAWWAZ was prominent among the members and associates of al Qaeda, including BIN LADEN. In 1993 or 1994, AL FAWWAZ attended meetings of the leaders of AQ, which took place in Khartoum, Sudan.*"

¶49) Objection to the statement: Bin Laden "*created*" the ARC and placed Khalid Al Fawwaz in charge.
Proposed correction: The ARC created the London office of the ARC and appointed Khalid Al Fawwaz as its manager.

¶50) Objection to: "*fatwahs (religious orders)*"
Proposed correction: "ARC communiqués."
Objection to: "*other al Qaeda members*"
Proposed correction: "other ARC members."

¶53) Objection to the following statements:

1990 – "*Is a trainee at an Al Qaeda military camp in Afghanistan*"
1992 -- "*Is Emir (leader) of al Qaeda military training camp in Afghanistan*"
1993 -- "*serves as a leader of al Qaeda members*"
1994 -- "*by Bin Laden*"
Proposed correction: "by the ARC in a resolution signed by Bin Laden."
1996 – Mr. Al-Fawwaz disputes the assertion that "*Al Fawwaz asked the Al-Quds newspaper editor to interview Bin Laden*"
1997 – Proposed modification: Replace "*Arranges an interview*" with "assists in arranging an interview..."
1997 – Proposed modification: insert "but never responded" after "*possible cooperation with a foreign government.*"
1998 – "*Is provided with a draft for review of a publication of the Fatwa from Atef*"
1998 – Proposed modification: insert "in response to request from Atef" following, "*Calls Atef to confirm publication of the Fatwa in Al Quds newspaper*"
1998 - Proposed modification: insert "in response to Atef's inquiry" following, "*Advises Atef which media outlets will most effectively 'send a clear message to the American people'*"

¶54) Objection to the following statements:
"*recovered a list of al Qaeda members.*"
Bin Laden was listed as "*the founder of al Qaeda, and it's [sic] Emir.*"
"*AL FAWWAZ was listed as number 9 in the al Qaeda hierarchy.*"
"*made sure that al Qaeda's message would be heard throughout the world.*"
"*to al Qaeda leadership in Afghanistan*"

¶55) Proposed modification: "Mr. Al Fawwaz was released five days after the initial arrest then rearrested the same day on extradition charges."

¶70) This statement does not accurately capture Mr. Al Fawwaz's statement during the interview.

Proposed modification: "Mr. Al Fawwaz does not dispute that he assisted in providing materials to certain individuals; however, he does dispute the charges and will appeal his conviction. That being said, what happened was painful and wrong and brings sadness to Mr. Al Fawwaz, but he had nothing to do with it."

¶95) Proposed modification: insert "without charge" following "*released a few weeks later.*"

¶101) Proposed correction: *"Khadah Al Mansoor"* should be changed to "Khalidah Al Mansoor."

¶102) *"and is experiencing 'medical problems'"* should refer to Khalidah Al Mansoor (in ¶101), not Wejdan Al Sadoon.

¶118) -- Objection to:
*"now known as al Qaeda, with Osama bin Laden."*
*"Al Fawwaz stated that he was a volunteer and was not paid for this service."*
Proposed modification: "The ARC paid Mr. Al-Fawwaz's expenses."

¶ 119) -- Proposed modification: replace *"owned and operated"* with "registered."
Proposed modification: *"Asma Inc."* should be "Asma Ltd."
Proposed correction: replace *"to Saudi Arabia after one year"* with "to Kuwait shortly after his arrest in Nairobi."

¶120) -- Proposed modification: Change *"the business closed in 1994"* to "the business closed in 1993."

Please contact me with any questions. Thank you.

Very truly yours,

*Bobbi Sternheim*

BOBBI C. STERNHEIM

cc: All counsel
    (via email)